Colligan *v.* Cooney.

COLLIGAN *v.* COONEY.

(*Jackson.*     May 25, 1901.)

1. TAX SALE.   *Void for want of description of land.*

A judicial sale of lands for taxes is void, although the decree contains a full and sufficient description of the lands, where the pleadings upon which it is based contain no such description. (*Post, pp. 219–221.*)

Cases cited: Morristown *v.* King, 11 Lea, 669; Rhinehart *v.* Nealis, 101 Tenn., 169.

2. SAME.   *Same.*

The opinion affords several examples of tax sales made under decree which are held void for want of sufficient description in the pleadings of the property sold.   (*Post, pp. 216–220.*)

3. SAME.   *Collateral attack.*

A tax sale, when set up to the prejudice of a third person, who was not a party to the tax proceedings, may be impeached collaterally by such third person by proof *dehors*, the original record showing that the proceedings and sale were erroneous either in law or fact.   (*Post, pp. 220–223.*)

FROM   SHELBY.

Appeal from Chancery Court of Shelby County. S. J. SHEPHERD, Special Chancellor.

F. H. HEISKELL for Colligan.

L. & E. LEHMAN for Cooney.

BEARD, J. This is a controversy over three lots in the city of Memphis. The complainant's title rests upon decrees of sale pronounced in two suits begun in the Chancery Court of Shelby County, by the State, to enforce leins for taxes claimed to be due for the years 1891 and 1892 from the owners on these lots. One of these suits was styled *State* v. *Rées*, and the other *State* v. *Leggatt*, the first of which was filed on the 10th, and the latter on the 12th of January, 1894. At the sale made under the decrees in these two cases, complainant became the purchaser, and, having paid the purchase price, decrees were entered divesting title out of the parties to the suits, and vesting it in him. Prior to the institution of these tax suits, the defendant, Annie Cooney, filed her bill in the Chancery Court of Shelby County against Bridget Cooney, Alice Cooney, Mary E. Cooney, and another, in which she alleged that she was a creditor of Bridget Cooney, and that, since the creation of her debt, the latter had made conveyances to Alice and Mary E. Cooney of the lots in controversy, without consideration and for the purpose of hindering, delaying and defrauding her creditors, and especially the complainant, and the Court was asked to avoid these conveyances and subject these lots to the payment of complainant's debt. This cause proceeded to a decree fixing the amount of the debt, adjudging the conveyances in question to be fraudulent in fact and law, and

subjecting the property to the satisfaction, *pro tanto*, of complainant's claim.

Under this decree, sales were made, at which complainant purchased. These sales were subsequently confirmed and title to the property vested in Annie Cooney, and a writ of possession was ordered. This writ the present bill was filed to perpetually enjoin.

No question is made on the regularity of the last mentioned case. The contention of the present complainant is that he acquired title under decrees pronounced in causes which, though filed subsequently to that of *Cooney* v. *Cooney*, were instituted to enforce a paramount lien for taxes which antedated the last mentioned case, and to which the then record owners of the property, to wit: Alice and Mary E. Cooney, were regularly made parties, that he thus became its absolute owner, and was entitled to protection against the writ of possession. This contention is based on *Dunn* v. *Dunn*, 99 Tenn., 598.

To this, the answer of defendant is that the pleadings in the tax suits failed altogether to identify the property which was sought to be subjected, and that the decrees for sale pronounced in the two causes of *State* v. *Rees* and *State* v. *Leggatt* for the first time identifying them and describing them by metes and bounds, were unwarranted by any proper pleading, and therefore were *coram non judice*.

To understand this defense, it is necessary to state the facts. The bill in the case of *State* v. *Rees* was filed against many defendants owning vari-

ous parcels of property. To this bill Alice and Mary E. Cooney were made defendants, and it was alleged that they were the owners of "lots 46, 74 by 148½ feet, listed to J. T. and P. Cooney," and "pt. lot 287, 24 by 74 W. S. Jackson, listed to J. T. Cooney."

The bill in *State* v. *Leggatt* was also an omnibus bill, to which, among others, Alice E. Cooney was made a party, and the property of hers sought to be reached is thus described: "Country lot 500— 50x159, N. S. Washington street." The case of *State* v. *Rees* proceeded without other description of the lots embraced in it, up to and including the Master's report, after the filing of which a decree was entered confirming it and ordering a sale of these lots, when they were for the first time identified by specific description as follows: "A certain lot, being the north part of lot 46, as designated in the plan of the city of Memphis, beginning at the northeast intersection of Chickasaw or Front street with the alley between and parallel with Jackson and Overton streets, thence south with Chickasaw street 26 feet 1 inch, thence east at right angles with Chickasaw street 148½ feet to an alley, thence north with said alley 26 feet 1 inch to another alley, thence west with said alley 148½ feet to the beginning. 2. A certain lot beginning 49 feet, at a point on Jackson street, city of Memphis, east of the southwest corner of lot 287 on the north side of Jackson street, thence eastwardly

with the north side of Jackson street 24 feet to a point on Jackson street,. thence northwardly and parallel to Second street 74 feet, thence westwardly and parallel with Jackson street 24 feet to a point, thence southwardly and parallel with Second street 74 feet to the beginning."

The proceedings in *State* v. *Leggatt* was altogether similar until the decree for sale was reached, which, for the first time, identified the Washington street lot as follows : "A certain lot, beginning on the north side of Washington street, 390 feet east of High street and 32 10-12 feet east of Mrs. Rhinehardt's fence, thence northwardly and at right angles with Washington street 156 10-12 feet to center of alley, thence southwardly 156¾ feet to Washington street, thence westward 50 feet to the beginning."

The evidence adduced in the present cause shows that lot 287 has a frontage of 74 feet and 3 inches on the west side of Second street and runs back westwardly 148 feet and 6 inches to an alley, having for its northern boundary line Jackson street, and that the portion of it which defendant Annie bought and which complainant claims under his purchase, fronts 24 feet on the north side of Jackson street, and has a depth of 74½ feet, and is situated 49 feet east of the alley between Main and Second streets, and is a little less than one-sixth of the whole lot 287.

As to country lot 500, the evidence discloses that it has an area of 23 acres, with a frontage on Washington street of more than 700 feet. That part of this lot, which defendant bought and which complainant claims under his purchase, fronts 35 feet on the north side of Washington street, and begins about 396½ feet east of 'High street, having a depth of 156 feet.

The question on this record, then, is, can the specific decrees for sale describing, by metes with bounds, the portions of lot 287, 46 and 500 be saved on pleadings that lack all description of identification of those portions?

The rule in regard to tax deeds is, that to be valid they must contain such description as wlil, without the aid of extraneous facts, designate with reasonable certainty the property sought to be conveyed. To this proposition many cases may be cited. These may be found in first note to p. 686, 25 Am. & Eng. Enc. Law, 1st ed.

We think it is clear under this rule that, if a tax deed had been executed describing these lots as they are described in the pleadings and other papers in the cases of *State* v. *Rees* and *State* v. *Leggatt*, down to the decrees for sale, that it would have been held void for vagueness. If this be so, we are not able to understand that the pleadings in these cases stand on higher ground. That they do not we are satisfied. It follows, therefore, that the decrees for sale, following such vagueness in plead-

ing, though themselves specifically describing the lots, lack all foundation and are *coram non judice.* Such decrees stand as if entered without pleadings, or as if these lots were for the first time brought into the record. This is but the application of a general rule to these tax proceedings.

A few cases, illustrating the view of various courts on this subject, are referred to.

The sale of land by an administrator, which is included in the order of sale but not described in the petition, has been held void in California and Massachusetts. *Townsend* v. *Gordon,* 19 Cal., 188 ; *Very* v. *McClelland,* 6 Gray, 535. In Arkansas, a report of commissioners, appointed to assign dower, was declared void, because it included a parcel of land not included in the petition. *Fall* v. *Wright,* 18 S. W. R., 1044. In Missouri, a decree in a tax foreclosure proceeding, which correctly described the land as in K's second addition, was adjudged void, because the petition described it as in K's addition. *Milner* v. *Shipley,* 7 S. W. R., 175. And in *Mayor, etc., of Morristown,* v. *King,* 11 Lea, 669, where property was insufficiently described in the assessment, but accurately so in the report of sale, it was held that the latter perfect description did not cure the former imperfect one. But it is insisted that the vagueness of description in these tax suits only became apparent by the introduction of evidence *dehors* the record, and that to consider

this evidence is in violation of the rule announced in *Rhinehart* v. *Nealis*, 101 Tenn., 169.

That case was one of a party to a suit who by a subsequent proceeding sought to impeach a decree pronounced in the former by setting up an extraneous fact, which existed during the pendency of that suit. In such a case the rule is well established that "domestic judgments of courts of general jurisdiction cannot be attacked by evidence outside of the record itself."

Here, however, we have a very different case. The proceedings in the tax suits are called in question by one who is neither a party nor a privy to those suits. The distinction between the two classes of suits is universslly recognized, says Mr. Wharton in Vol. 2 of the Law on Evidence, Section 820: "A record is bilateral when introduced between parties and privies, and when so . . cannot be disputed. Records, on the other hand, are unilateral when offered to show a particular fact, as a *prima facie* case, either for or against a stranger. Even parol testimony may be used to explain their applicability in such a case." The rule as to strangers to the record is that of *res inter alios acta*, embodied in Brown's Legal Maxims, 858, as follows: "A transaction between two parties ought not to operate to the disadvantage of a third." As is said in 1 Freeman on Judgments, Section 154, "it is a general rule that adjudication takes effect only between

the parties to the judgment, and that it gives no right to or against third parties."

In *Vose* v. *Morton*, 4 Cushing, 27, there was a controversy between a tenant in possession and the purchaser of land in an attachment proceeding to which the tenant was not a party. The purchaser insisted, as is done in the present case, that the judgment in the attachment proceeding was conclusive of his rights. To this the Court said: "A judgment is conclusive only against parties and privies. The tenant is in no sense a party or a privy to that judgment. [Being neither a party nor a privy to the judgment, he cannot have a writ of error to reverse it, although it may be erroneous and void; but when such judgment is set up collaterally to defeat the tenant's title, which is otherwise good, and the tenant can show the judgment is erroneous, either in matter of law or fact, he may do so by proof." To the same effect are *Nason* v. *Blaisdell*, 12 Vt., 165; S. C., 36 Am. Dec., 331; *Winton* v. *Gorrell*, 3 Ire. Eq., 117; S. C., 40 Am. Dec., 456; *Schulze's Appeal*, 1 Pa. St., 251; *Hunter* v. *Hutton*, 4 Gill, 115; S. C., 45 Am. Dec., 117; *Sidensparker* v. *Sidensparker*, 52 Maine, 481; S. C., 83 Am. Dec., 527; *Buffum* v. *Ramsdell*, 55 Maine, 481; S. C., 92, Am. Dec., 589.

So it is, upon authority, as well as a matter of common right, the defendant, Annie Mooney, was entitled to the benefit of the evidence put into this record, which showed the extent of lots 287 and 500,

Colligan *v.* Cooney.

and the other lack of description in the pleadings of the parts of those lots which complainant attempted to buy in the tax suits.

As to complainant's claim to a portion of lot 46, it is in the same condition with the other lots, but it also fails for another reason. The decree under which he purchased, directed the sale of the *north* part of that lot. This is the portion which he bought, while the defendant was the purchaser of the south part of the lots. As a matter of course complainant has no ground for interfering with her as to this part.

The result is that the decree of the Chancellor is reversed, the bill of the complainants is dismissed, and the injunction made perpetual by the Chancellor is dissolved.