## W. A. COLLIER, et al., v. CITY OF MEMPHIS.

Western Section.    March 18, 1927.

No petition for Certiorari was filed.

1. **Appeal and error.** The refusal of the trial court to sign a bill of exceptions can not be reviewed on a simple appeal.

The only remedy provided by law for a failure or a refusal of a trial court to file a bill of exception is by a mandamus proceeding.

2. **Municipal corporations. A municipality can not maintain or operate a nuisance in the exercise of its governmental power to make improvements.**

It is well-settled that a municipality can not put into operation and maintain a thing that is a nuisance per se or which would result in irreparable damage and injury to a citizen or to the public and the aid of the chancery court may be invoked to enjoin a municipality from so doing.

3. **Injunction. A chancery court will not grant an injunction to prevent an alleged trespass unless it appears that irreparable injury will result.**

A court of chancery should not lend its aid by injunction to prevent an alleged trespass or nuisance unless it appears that irreparable injury or damage to the individual or to the public would result.

4. **Injunction. The granting of an injunction lies within the discretion of the court.**

A decree for an injunction is a matter for the sound legal discretion of the trial court to be granted or withheld as that discretion shall dictate after a full and careful consideration of every item pertaining to the injunction.

5. **Injunction. Evidence. Evidence held insufficient to require the court to grant an injunction.**

In an action to restrain the city from draining a municipal swimming pool into a ditch that ran across complainant's premises, where the jury found from the facts that the water drained from the swimming pool was not polluted and did not stand and become stagnant in the ditch, held that the court was justified in refusing to grant an injunction.

6. **Injunction. Evidence held sufficient to justify the court granting an injunction.**

Where the evidence showed that defendant was entitled to drain its municipal swimming pool into a ditch that ran across complainant's land, and the complainant was not entitled to an injunction restraining the drainage of the pool across his land and the defendant had filed a cross-bill asking that complainant be restrained from stopping up the drain, held that the defendant was entitled to the injunction.

Appeal from Chancery Court, Shelby County; Hon. Wightman Hughes, Chancellor.

Affirmed.

Collier & Collier, of Memphis, for appellant.

W. D. Kyser, and S. W. Overton, of Memphis, for appellee.

SENTER, J. The appeal in this case is from the final decree of the Chancellor in denying to complainants the injunctive relief sought by the original and the amended and supplemental bills and the dismissal of complainants suit; and from the decree of the Chancellor sustaining the cross-bill of the defendant City of Memphis and making perpetual the temporary injunction granted under the allegations of the cross-bill. Appellants have filed two sets of assignments of error. Under the first set of assignments of error, the first three assignments challenge the action of the Chancellor in refusing to accept and ordered filed the bill of executions alleged to have been tendered to the Chancellor by complainants within the time required. The other assignments of error under the first set of errors assigned

are substantially covered by the second set of assigned errors, which it is stated by appellants are based solely upon the "technical record," and independent of the bill of exceptions.

The original bill alleges that complainants are the owners of certain lands in the City of Memphis and Shelby County, Tennessee, known as "the N. M. Trezevant Sub-division of lands," with certain exceptions set out in the bill. The original bill alleges that the City of Memphis acquired the tract of land of about 160 acres, which it now uses for the Tri-State Fair Grounds and under the control of the Memphis Park Commission; that in the summer of 1922 a swimming pool was built and put into operation as a municipal swimming pool by the City of Memphis, which swimming pool covers a considerable area and holds about 1,500,000 gallons of water, and that said swimming pool is drained every Saturday night, and that also public baths are operated in connection with the swimming pool in which a large quantity of water is used and which flows continuously from the shower baths used by the public. It is alleged that when this swimming pool and baths were erected and put into operation and made free to the public that the only means of carrying off the water emptied from the swimming pool weekly and from the baths regularly is an underground culvert, leading from the swimming pool and bath rooms to the northwest corner of the Tri-State Fair Grounds, emptying into an open drainage ditch running through the center of East Parkway at the intersection of Central avenue; then following in a northerly direction through said open ditch, and carried by a culvert under the roadbed of East Parkway, and there falling upon and over the premises of complainants; that as the result a surface drainage canal of varying length and depth now exists on the lands and premises of complainants, and extending across the lands and property of complainants to the northwest corner. It is charged in the bill that this water from the municipal swimming pool and the baths is polluted because of its use by the many bathers using the swimming pool and bath, and has also polluted the atmosphere in the vicinity of this open ditch or surface drainage; that the lands of complainants through which this open ditch passes are used for the pasturing of dairy cattle, and that considerable areas of the lands have grown up in weeds, and infected pools have formed which become stagnant and affords breeding places for mosquitoes through this open ditch and its course across the premises of complainants and beyond. It is alleged that this constitutes a nuisance, and has resulted and will result in great and irreparable damage to the property of complainants, and that such use of said open ditch and canal across the lands of complainants by the City of Memphis is a trespass, and is unwarranted and illegal.

There are other allegations contained in the original bill, and especially with reference to certain other drainage ditches or canals wrongfully and unlawfully used by the City of Memphis and to the irreparable injury and damage of complainants. But the assignments of error and the briefs filed in support thereof by appellants are directed especially to the wrongful use of the drainage ditch into which the swimming pool and baths referred to are emptied.

The original and supplemental bills filed in this cause by complainants allege other matters which we deem unnecessary to consider under the assignments of error and questions made on this appeal.

The defendant, the City of Memphis, filed a demurrer to the original bill, setting forth several grounds, and also filed an answer. It is unnecesary to consider the demurrer as the Chancellor disposed of the case on the bills and answers and the evidence, including the verdict of the jury on the issues of fact presented by the pleadings, which issues of fact were made up under the direction of the Chancellor and submitted to the jury, which jury had been called for by the complainants.

The answer of the defendants to the original bill admits that it is advised and informed that the complainants are the owners of certain property composing a part of the Trezevant Sub-division lying east of the Parkway, but does not admit that the same is correctly described in the bill. The answer avers that all of the property of complainants described in the original bill is within the city limits of the City of Memphis. It admits the allegations in the bill with reference to the donation or dedication by complainants to the City of Memphis of the strip of ground 100 feet wide extending along the east side of Trezevant avenue between Madison avenue and Central avenue, or so much thereof as complainants then owned, but that the dedication of said strip of ground was made by complainants for the purpose of enhancing and making more valuable the contiguous property of complainants. It is stated in the answer that at the time said property was dedicated to the city for said street or avenue purposes by the complainants and other owners who made similar dedications at the same time, that there then existed natural drainage ditches along the east and west sides of Trezevant avenue, running north from in front of the present Tri-State Fair Grounds, then known as Montgomery Park, and that the ditch on the east side of Trezevant avenue was the main open ditch, and the smaller ditch was on the west side which crossed the avenue under a culvert and emptied into the larger ditch which ran down the east side of Trezevant avenue; that this system of natural drainage had existed for a great number of years and that the city in constructing the parkway, as was contemplated by all parties, left this natural drainage in the same location on the east side of Trezevant avenue, which was

then the center of the east Parkway at that point. The answer denies that the city had altered or changed the course of the natural drainage by its street improvements, except by running other lateral drainage into this ditch which was not only necessary but in contemplation of all the parties for the proper improvement of the parkway, streets and drives, and that this occurred more than twenty years before the filing of the bill in this cause. The answer further alleges that there is now, and has been for more than fifty years, a natural ditch or drain and water course running from the point where the tiling or culvert is placed across the east driveway of the parkway running northeasterly across the property of complainants, which is a well defined ditch and water course, approximately ten feet wide, and from four to five feet deep, and that this natural ditch and water course being at the lowest point of that particular section, is now, and has always been, the natural course for the surface drainage, and has been in existence at its present location for many years, and that this ditch or water course continues in a southeasterly direction, crossing the N. C. & St. L. Railway, and thence in a westerly direction, crossing the property of the complainants, and on through the City of Memphis and Overton Park to Lick Creek, and is one of the tributaries of Lick Creek forming the natural drainage for that entire territory. The answer denies that this is a drainage ditch made by the defendant down through the center of the Parkway, and which crosses the east driveway of the Parkway through the thirty-six inch tiling, but alleges that said ditch at said point has been for many years the natural drainage for that particular territory and existed long before the parkway was built.

The answer of defendant admits that in the year 1922 it built a municipal swimming pool in the Tri-State Fair Grounds for the purpose of affording healthful and beneficial recreation to the people of the City of Memphis; that this swimming pool during the summer seasons is patronized by an average of approximately 2,000 people per day. It is alleged in the answer that in order to properly operate and manage this swimming pool it is necessary that it should be completely drained, washed out and refilled with pure clear water at frequent intervals; that the pool is constantly chlorinated by a sufficient amount of chlorine to avoid typhoid and other disease germs; that the defendant only puts into the swimming pool a sufficient amount of chlorine to destroy bacteria and disease germs, and not more than is used by municipalities in the drinking water used for human consumption.

The answer denies that there is any polluted water drained into any of the drains, as alleged in the original bill, but states that the swimming pool is so arranged, managed and operated that every person who enters this pool is required before entering the swimming

pool to bathe the body in warm water under shower baths provided for that purpose, and that the water from the shower baths and tiolets and closets is all drained into the sanitary sewer, and does not empty into the open ditch referred to as crossing the lands of complainants. It is stated in the answer that in order to be more certain that this swimming pool is kept in the highest state of cleanliness it is drained during the heated season once a week; that only the water from the swimming pool and certain sprays is allowed to flow into the natural drain and water course complained of; that there are sprays of water which are kept clean and pure and, through which the bathers pass before entering the swimming pool, but after the warm shower baths, which flows constantly through this natural water course or ditch, and that this continuous flow from these small sprays, being purified and kept clean, makes a constant flow through this open ditch, although small in quantity, keeps any water in the ditch from becoming stagnant, and makes a small stream of water running continually through this open ditch and natural water course, and which prevents the water in this ditch from becoming stagnant and from becoming invested with mosquitoes, etc. It is denied in the bill that any bad odors result from the swimming pool and sprays being emptied into the open ditch in question; that the pool has been in operation and use for a period of three years, and that there has never been during that time the slightest odor from the same, nor has there ever been any complaint during that time of any odor. It is further alleged in the answer that the water in this pool being treated as it is with chlorine is rendered free from contaminating impurities, and that its being emptied into this natural ditch or drainage is in no sense deleterious or hurtful, or objectionable on account of any contaminating effects. The answer denies that the emptying of this swimming pool into this open drainage ditch has ever caused, or will ever cause the slightest overflow of the ditch; that the volume of water emptied from the swimming pool is not sufficient to tax the capacity of the ditch so as to occasion any overflowing of the same, and that it was never drained into this ditch during rains, or at any time when there would be even slight danger of overflowing the same. All allegations with reference to any damage to complainants or their property resulting from emptying the water from the swimming pool, are denied in the answer. It is also denied in the answer that the complainants have, or will, suffer irreparable damage as the result of the swimming pool water being emptied or drained into the ditch on the lands of complainants. All allegations contained in the bill with reference to the damage, irreparable or otherwise, resulting to complainants from the drainage of this swimming pool into this open ditch, are denied in the answer. The answer denies that complainants are entitled to the

injunctive relief sought by the bill, or any other relief prayed for by complainants in the original and supplemental and amended bills.

We have made the statement of the pleadings somewhat elaborate, especially with reference to the drainage of the swimming pool into the open ditch, because of the state of the record and the assignments of error. This becomes especially important because of the bill of exceptions contained in the record, the filing of which was not ordered by the Chancellor, and which alleged bill of exceptions the Chancellor refused to approve, sign and order filed for the reasons and on the grounds stated by the Chancellor.

The refusal of the Chancellor to approve, sign and order filed the bill of exceptions which the Clerk, at the request of the solicitor for complainants, includes in the transcript, is made the basis of certain assignments of error by appellants on this appeal. This alleged bill of exceptions is contained in Volume 2 of the record, and is a document filed in the lower court, and upon which appears a certificate, or statement made by the Chancellor in the following language:

"State of Tennessee    )

"County of Shelby.    )

    "On this date, counsel for complainants has presented the above transcript as the bill of exceptions to be signed by the court.

    "The same not being, in the opinion of the court, a complete or correct record of all the evidence in the case, as tried before the jury, and not having been presented within the time prescribed by the rule of court, the court declines to certify the foregoing pages of testimony to be made the bill of exceptions in this cause.
        "This August 28, 1926.

                      "Wightman Hughes."

There is also attached to this alleged bill of exceptions the following statement or certificate by the Clerk and Master:

"In the Chancery Court of Shelby County, Tennessee.

"State of Tennessee,

"County of Shelby.

    "I, W. M. Cox, Clerk and Master of the chancery court of Shelby county, do hereby certify that the foregoing seventy-six pages contain a full, true and perfect transcript of certain documents and papers claimed by complainants to be a bill of exceptions in a certain cause lately pending herein, wherein W. A. Collier, et al. are complainants, and City of Memphis is defendant as the same appears on record and on file in my office. This is made up and certified at request of complainants counsel.

    "In witness whereof, I hereunto set my hand and affix the seal of said court, at office in Memphis, this 11th day of December, A. D., 1926.

              "W. M. Cox, Clerk and Master.

              "By D. C. Mitchell, D. C. and M."

This alleged bill of exceptions is not signed by the Chancellor, nor approved by the Chancellor nor ordered filed and made a part of the record by the Chancellor.

The assignments of error based upon the refusal of the Chancellor to approve, sign, and order this alleged bill of exceptions filed and made a part of the transcript of the record, cannot be sustained. This alleged bill of exceptions cannot be considered by this court at all, or for any purpose, because it is not properly a part of the record in this cause.

The defendant has filed a motion to strike from the record Volume 2 of the alleged transcript in the cause, which Volume 2 purports to be a bill of exceptions, upon the ground that the same was not authenticated by the Chancellor and that it was not signed and ordered filed by the Chancellor in the court below. And on the further grounds that the certificate of the Clerk attached to Volume 2 shows that it is not and should not be a part of the record in this cause.

We are of the opinion that the only remedy provided by law for a failure, or a refusal of the trial court to sign a bill of exceptions is by a mandamus proceedings. (Miller v. Koger, 9 Humph., 231; Mallong v. Tucker Mfg. Co., 7 Lea, 622; State v. Cooper, 107 Tenn., 202, and other cases which we think settles this question in this State.) However, the certificate or statement of the Chancellor setting forth his reasons for refusing to sign this alleged bill of exceptions appear to be entirely sufficient to justify and warrant his refusal.

It results that the assignments of error based on the action of the court with reference to the alleged bill of exceptions, are overruled and disallowed, and the motion of defendant to strike said Volume 2 of the transcript, which contains this alleged bill of exceptions, or so much thereof as contains the alleged bill of exceptions, is sustained.

By the other assignments of error filed by complainants it is contended that the complainants are entitled to the relief sought by the original and supplemental bills under the technical record, independent of the evidence heard at the trial, and that they are entitled on this appeal to have the decree of the Chancellor denying the relief sought by complainants in the original and supplemental bills reversed. And also to have the decree of the Chancellor sustaining the cross-bill of defendant and the granting and making perpetual the injunction against complainants, reversed by this court on the technical record and independent of the bill of exceptions.

The verdict of the jury on the several issues and the issues submitted to the jury, and the answers to the respective issues, are as follows:

"Issue No. 1. Are the ditches on the Collier property in controversy in this case the natural drainways for carrying the surface ·

water flowing into them from the surrounding area? If so how long have they been such? A. Yes, 40 years or more.

"Issue No. 2. How long have the drainways through the Collier property existed of the approximate size and character as they now exist? A. About 40 years.

"Issue No. 3. Is the swimming pool water traversing the Collier property injuriously polluted and contaminated? A. No.

"Issue No. 4. Does the swimming pool water traversing the Collier property work a damage to it? A. No.

"Issue No. 5. Does this swimming pool water injure or imperil the lives or health of people or animals? A. No.

"Issue No. 6. Does the surface water traversing the Collier property work a damage to the property? A. No.

"Issue No. 7. Does this surface water injure or imperil the lives or health of people or animals? A. No.

"Issue No. 8. Has the swimming pool been drained through the Collier property with the knowledge of complainants, and if so, for how long before this suit was brought? A. Yes, prior to the bringing of this suit.

"Issue No. 9. Has the surface water drained through the Collier property in the present ditches with complainant's knowledge? If so, how long? A. Yes, ever since he owned the property.

"Issue No. 10. Has the City of Memphis, in the operation of its oil station on the Belt Line Railroad, caused any substantial amount of tar or oil to flow upon the Collier property. A. No.

"Issue No. 11. Was there any substantial increase in the amount of surface water added to the drainage through complainant's property, resulting from the recent improvement of Central avenue? A. No.

"Issue No. 12. Does the proof show a more practical or feasible method by which the City of Memphis could drain the swimming pool water? A. No.

"Issue No. 13. Is the ditch in the neutral strip of the parkway the natural drainage course for carrying surface water from the surrounding area? A. Yes."

The above verdict on the issues submitted to the jury was duly received by the Chancellor, and filed and made a part of the record, and upon the verdict of the jury and the whole record the Chancellor entered his final decree dismissing the original and supplemental bills of the complainants, and making perpetual the temporary injunction granted to the defendant City of Memphis, on its crossbill, and adjudged the costs against complainants. A motion for a new trial was made by complainants and overruled by the Chancellor, and an appeal prayed and granted to this court.

There not being a bill exceptions properly in the record before us which can be considered on this appeal, and it appearing that the jury and the Chancellor heard evidence by depositions and by oral proof on the issues presented by the pleadings, we must assume that the finding of the jury on the respective issues submitted was supported by the evidence. In this view of the case, this court must hold that the issues and questions of fact alleged by complainants in the original and supplemental bills were not supported by the evidence. Likewise, we must hold that the evidence heard by the jury and the Chancellor supported the allegations of fact as set forth in the answer of the defendants.

We are now considering the assignments of error of complainant which challenge the decree of the Chancellor in denying to complainants the relief sought, and in dismissing complainant's original and supplemental bills. We will later consider complainant's assignment of error based on the action of the Chancellor in sustaining the cross-bill of defendant injoining the complainants from plugging or obstructing the flow of water through the drain as alleged in the cross-bill.

By certain of the assignments of error it is contended that the actions and conduct of the defendant in emptying the water from the swimming pool into the drain which meanders and crosses through the lands of complainant, constitutes an unlawful trespass, entitling the complainant to the writ of injunction injoining and restraining the defendant from committing the alleged trespass on their property. By other assignments of error it is contended that the emptying or draining of water from the swimming pool constitutes a nuisance both to complainants and to the public, entitling the complainants to the injunctive relief prayed for. It is insisted by these assignments of error that the trespass complained of in the original and supplemental bills, and also the maintenance of a nuisance by the defendants by emptying this swimming pool water into the open ditch, is shown by the technical record, independent of any proven facts or a bill of exceptions. Complainants in the excellent brief filed on this subject have cited numerous cases and authorities which they contend support the assignments of error on the subject of trespass and nuisance. The sections of the Code to which we are cited, being sec. 6496, Shannon's Code, sub-secs. 7, 8, 9, 15, 16; sec. 6506, sub-sec. 4, makes certain willful trespasses a misdemeanor or a felony in some cases, and neither of these sections or sub-sections are applicable to the alleged trespass complained of in this case.

In the case of Memphis v. Waite, 102 Tenn., 274, is an action for damages to recover of the City of Memphis compensation for the use and occupancy of certain property situated in the City of Memphis, and which the City of Memphis was using and occupying as a dump-

ing ground, and also used by the public as a dumping ground, and also using a part of this property as a roadway. In that case a judgment was recovered against the City of Memphis, and the court held that for such use and occupancy of the plaintiff's property by the City of Memphis, under the facts in that case, the City of Memphis was liable to the owners for reasonable compensation. In that case relief by way of injunction was not sought, it was simply an action to recover reasonable compensation for the use of this property.

The case of Pierce v. Gibson county, 107 Tenn., 214, is a suit by the complainant Pierce in the chancery court to enjoin Gibson county through its officers and agents from emptying the sewerage from the toilets, closets and urinals in the court house into an open ditch which ran through the lands of complainant, and emptied upon the lands of complainant. It appeared in that case that the building commissioners in charge of the building of a new court house then in the course of construction, installed the toilets, etc., in the court house, with the purpose of connecting the same with the sewer pipe, and conveying the same through a sewer pipe to an open dry ditch or drainage way which ran across the adjacent lands of complainants, and that the filth and fecal matter from these toilets would be washed down through the open ditch upon complainants lands. It was alleged in the original bill that the lands of complainants were used for pasturage of cattle and sheep; that complainant Pierce was engaged in operating a meat shop in the town of Trenton, and the cattle and sheep butchered by him were grazed and pastured on the lands through which this open ditch ran, and that if the sewerage from these closets and tiolets was conveyed into this open ditch it would greatly injure the business of complainant, and would result in polluting the water and the grass adjacent thereto and diseasing the cattle and sheep grazing on the lands. The injunction granted and made permanent by the Chancellor as prayed for in that case, and the decree of the court, was affirmed by the Supreme Court on appeal. The rights of the complainants to enjoin the action, or the proposed action, of the agents of the county from emptying this filth and polluted sewerage onto the lands of complainant in that case was fully sustained by the Supreme Court in an able opinion by Mr. Justice McAlister. The Supreme Court found, as did the Chancellor, from the proof in the case, that the defendants at the date the bill was filed, were making provision to convey and empty the sewerage from said water closets, etc., and it was their purpose to connect the water closets of the court house, and empty the same into the open ditch and onto the lands of complainants. It was held by the court that under the facts in that case a nuisance would thus be created, and that irreparable damages to complainant would result. As was said by the court, after a full statement of the facts

and the evident polluted and contaminated character of the sewerage that would be emptied into this ditch and onto the lands of complainants: "Surely complainants' cannot be asked to wait until the injury is inflicted before invoking the aid of a court of equity. If the danger is threatened and impending, a party has a right to a preventive remedy." Among other contentions made by the defendant in that case, it was argued that the proposed sewer connection, its location and general plan are matters which involve the exercise of the discretion of the county authorities, and that in the performance by the county of a governmental power the courts will not interfere, citing Horton v. Nashville, 4 Lea, 37; Chattanooga v. Reid, 19 Pickle, 616, in support of that contention. But our Supreme Court said: "But it is well-settled that a municipality or county, in the construction of a public work, is not privileged to permit a nuisance, to the special injury of the citizens, and for such act is liable as a private individual in damages, or it may be restrained by the writ of injunction." Citing Chattanooga v. Dowling, 17 Pick., 345, and other cases.

We think that it is well-settled that a municipality cannot maintain or operate a nuisance in the exercise of its governmental power to make improvements. We do not think that a municipality could put into operation and maintain a thing that is a nuisance per se, or which would result in irreparable damage and injury to a citizen, or to the public; and the aid of the chancery court may be invoked to enjoin a municipality from so doing. Chattanooga v. Dowling, supra; Pierce v. Gibson county, supra.

We are further of the opinion that a court of chancery should not lend its aid by injunction to prevent an alleged trespass or nuisance, unless it appears that irreparable injury and damage to the individual or to the public would result. Madison v. Copper Co., 113 Tenn., 331; Railroad v. Transportation Co., 128 Tenn., 277.

In the case of Madison v. Copper Co., supra, our Supreme Court quotes with approval from Wood on Nuisances (3rd Ed.), p. 1182, where it is said:

"The true intent of a court of equity being to do justice between parties, it will not issue a restraining order except where the rights of the parties demand it, and in determining this question, all the circumstances of location, the effect of the act claimed to be a nuisance, and the effect upon the defendant's business and interests will be considered; and, while the usefullness of the business, or its importance, magnitude or extent, will not in all cases prevent interference, yet if the injury on the one hand is small and fairly compensible in damages and the loss to the other party would be large and disastrous, an

injunction will be refused and the party left to his legal remedy.''

In the same cause it is said by our Supreme Court:

"But there is one other principle which is of controlling influence in this department of the law, and in the light of which the foregoing principle must be weighed and applied. This is, that the granting of an injunction is not a matter of absolute right, but rests in the sound discretion of the court to be determined on a consideration of all of the special circumstances of each case, and the situation and surrounding of the parties, with a view to effect the ends of justice.

A judgment for damages in this class of cases is a matter of absolute right where injury is shown. A decree for an injunction is a matter of sound legal discretion, to be granted or withheld as that discretion shall dictate, after a full and careful consideration of every element appertaining to the injury.''

In the instant case the decree of the Chancellor follows the verdict of the jury on the several issues of fact submitted to the jury. These issues fairly presented the respective contentions of the parties complainant and defendant as to the effect had upon the complainant's land and property rights by the emptying of the swimming pool in question into the open ditch. These issues were all determined by the jury in favor of the defendant, and against the allegations contained in the bill of complainants. The finding by the jury on the issues of fact, we must assume, in the absence of a bill of exceptions containing the evidence, was supported by the evidence. If the answers of the jury to the several questions and issues submitted to the jury are supported by the evidence, then we cannot see that complainants could suffer irreparable injury and damage as a result of the emptying of the water from the swimming pool into the open ditch. In the state of the pleadings, and the issues presented by the pleadings, the verdict of the jury, approved by the Chancellor becomes conclusive upon this court, since there is not a bill of exceptions contained in the record to which this court can look.

It results that the assignments of error of appellant based upon the decree denying the relief sought by complainants, and in dismissing the original and supplemental bills, are overruled.

The only other question remaining is presented by the assignments of error directed toward the action of the court and the decree of the court in sustaining the cross-bill of the defendant, and making the injunction against complainants obstruction of the ditch or culvert perpetual.

We are of the opinion that there was no error in the decree of the Chancellor in sustaining the cross-bill and granting the relief

sought therein. There were certain issues of fact submitted to and determined by the jury, which if supported by the evidence, and for the reasons above set forth we must assume, in the absence of a bill of exceptions, were so supported, that well warranted the decree of the Chancellor in sustaining the cross-bill of defendants and the granting of the relief by injunction as prayed for in the cross-bill. The authorities already referred to and cited in this opinion are applicable to the questions made with reference to the decree of the Chancellor in sustaining the cross-bill.

It results that all assignments of error are overruled, and the decree of the Chancellor is affirmed. Appellants and surety on the appeal bond will pay the costs of this appeal.

Owen and Heiskell, JJ., concur.