STATE OF TENNESSEE, *ex rel.*, ETC., *v.* W. A. COLLIER *et al.*\*

(*Nashville,* December Term, 1929.)

Opinion filed, February 1, 1930.

---

\*On the question of constitutional provision as to use of words "subject and object" expressed in title of statute, see 25 R. C. L., 834; 4 R. C. L. Supp., 1604; 5 R. C. L. Supp., 1348; 6 R. C. L, Supp., 1486.

As to sufficiency of description of land in tax proceedings, see annotation in 1 A. L. R., 1228; 26 R. C. L., 357; 3 R. C. L. Supp., 1470; 4 R. C. L. Supp., 1662; 5 R. C. L. Supp., 1405; 6 R. C. L, Supp., 1554.

Presumption against implied repeal of statute, see 25 R. C. L., 918, 3 R. C. L. Supp., 1434; 4 R. C. L., 1607; 5 R. C. L. Supp, 1352; 6 R. C. L. Supp., 1491; 7 R. C. L. Supp., 855.

408

410

KLEWER, GAILOR & EXBY and J. N. THOMASON, for complainant, appellant.

COLLIER & COLLIER, D. B. PURYEAR and J. S. PILCHER, for defendant, appellees.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This suit was brought by the State of Tennessee for its own use and for the use of the County of Shelby and the City of Memphis against several defendants named, to recover State, County and City taxes alleged to have been delinquent for a number of years. The chancellor rendered a decree in which the relief sought was partially granted and judgments rendered as to certain parcels of real estate. The proceedings were dismissed as to other parcels of real estate. Both sides have appealed. The case is before us on numerous assignments of error, which we shall undertake to consider separately.

The first proposition advanced on the hearing for defendants is that chapter 790 of the Private Acts of 1919, which Act undertook to annex certain territory to Memphis, is unconstitutional, and that for this reason the chancellor's decree was erroneous in so far as it adjudged defendants' liability for city taxes accruing under said Act over a period of several years.

The objection urged against chapter 790 of the Acts of 1919 is that it did not pass the Senate according to the requirements of section 18 of Article II of the Constitution which ordains that "no bill shall become a law until it shall have been read and passed on three different days in each House."

We will assume for the present that, in the disposition of this question, we may refer to the bills as originally introduced in the House and in the Senate, as well as to the Journals of those bodies, in order to get the history of this legislation. From such sources, we find the following:

Senate Bill No. 1045 was "an Act to extend the corporate limits of the City of Memphis, Shelby County, Tennessee, so as to embrace" territory then included in the Town of Binghampton and certain territory be-

tween Binghampton and Memphis. We will refer to this as the Binghampton bill.

Senate Bill No. 1046 was "an Act to extend and change the corporate limits of the City of Memphis in Shelby County, Tennessee," so as to add to the city a much larger territory, including the Binghampton territory. We will refer to this as the Greater Memphis bill.

House Bill No. 1146 was "an Act to extend the corporate limits of the City of Memphis, Shelby County, Tennessee, so as to embrace" the Binghampton territory. This bill appears to have been identical in caption and body with Senate Bill No. 1045 above mentioned and will be referred to as the Binghampton bill.

House Bill No. 1236 was "an Act to extend and change the corporate limits of the City of Memphis in Shelby County, Tennessee," so as to include virtually the same territory described in Senate Bill No. 1046. This will be referred to as the Greater Memphis bill. There is a slight discrepancy in the description of the territory covered by the Senate Greater Memphis bill and the House Greater Memphis bill.

Both the Greater Memphis and Binghampton bills passed two readings in the Senate. The Binghampton bill passed two readings in the House. The Greater Memphis bill passed a third reading in the House and was transmitted to the Senate. The Senate Journal then shows:

" 'Senate Bill No. 1045—To extend the corporate limits of Memphis.

" 'On motion Senate Bill No. 1045 was made to conform with House Bill No. 1236.

" 'On motion House Bill No. 1236 on the same subject was substituted for Senate Bill No. 1045, and put on its third and final reading for passage.

" 'On motion of Mr. Rice (of Shelby), the following amendment was adopted:

" 'Amendment No. 1. Amend by striking out the words "first day of September, 1919" wherever the same appears in said bill, and inserting in lieu thereof the words the first day of December, 1919.

" 'On a call of the roll the House (Senate) Bill as amended passed by the following vote:

" 'Ayes .............. 24.

" 'Noes .............. 0.' "

It is argued for the defendants that Senate Bill 1045 was a bill with a restrictive caption covering only the Binghampton territory; that House Bill 1236 was a bill with a general caption covering unlimited territory; that House Bill 1236 was substituted for Senate Bill 1045 and the two being on different subjects and dealing with different territory, Senate Bill 1045 was therefore not read three times in the Senate and chapter 790 of the Acts of 1919 thus originating is not a valid law.

■ It may be here stated that, when an Act of the Legislature has been signed by the respective Speakers of both Houses in open session, and that fact noted on the Journals, and has been approved by the Governor, every reasonable presumption is in favor of the regularity of its passage, and the Act will be sustained unless the Journals affirmatively show the absence of some constitutional requirements. *House* v. *Creveling*, 147 Tenn., 589; *Wilson* v. *State*, 143 Tenn., 55; *Jackson* v. *Manufacturing Co.*, 124 Tenn., 421; *Nelson* v. *Haywood County*, 91 Tenn., 602; *State ex rel.* v. *Algood*, 87 Tenn., 163.

█ Since all these formalities appear to have attended the passage of the Greater Memphis Act, chapter 790 of the Acts of 1919, in order to set up defective passage in the Senate, the Journal of that body must establish this contention. We are of opinion that the Senate Journal demonstrates the contrary.

It is beyond dispute that the Senate Greater Memphis bill (No. 1046) passed that chamber on two readings before the House Greater Memphis bill (No. 1236) was transmitted. The Senate Journal then recites that House Bill No. 1236, which had been transmitted to the Senate "on the same subject" as a designated Senate Bill was substituted for that Senate Bill "and put on its third and final reading for passage," and after an amendment as to its effective date was passed.

For what Senate Bill was the House Bill Substituted? For the Senate Bill on the same subject as the House Bill. What Senate Bill was on the same subject? The Greater Memphis bill with an identical caption and with slight difference in body. In a constitutional sense the subject and the object of a bill are equivalent terms. Lewis' Sutherland on Statutory Construction (2 Ed.), section 116, 25 R. C. L., p. 834.

Senate Bill No. 1045 and Senate Bill No. 1046 are not on the same subject. No. 1045, the Binghampton bill, had for its object the annexation to Memphis of a very limited territory. No. 1046, the Greater Memphis bill, had for its object the annexation to Memphis of an extensive territory. Likewise Senate Bill No. 1045 was not on the same subject as House Bill No. 1236, while Senate Bill No. 1046 was on the same subject as House Bill No. 1236.

At the most it can only be said that the Senate Journal entry under consideration is somewhat ambiguous in that the words and figures of said entry do not harmonize. This ambiguity might be resolved by the application of familiar rule of construction of written instruments that words prevail over figures where there is a conflict between them.

As said by the Minnesota Court in a case similar to this "The file number is no legal or constitutional part of the title of a bill. It is merely designed for the convenience of the legislative members and clerks. It may therefore be rejected as surplusage, and if this is done, there is neither defect or ambiguity in the legislative Journals." *Miesen* v. *Canfield*, 64 Minn., 513.

The case before us is ruled by *Wilson* v. *State, supra*. In that case Senate Bill No. 1158 and House Bill No. 1221 were identical. House Bill No. 1221 and House Bill No. 1220, both applicable to Lincoln County but upon different subjects, had passed two readings. Senate Bill No. 1158, counterpart of House Bill No. 1221, passed three readings in the Senate and was transmitted to the House. The House Journal showed the following entry:

"On motion Senate Bill No. 1158 on the same subject was substituted for House Bill 1220. Thereupon Senate Bill No. 1158 passed its third and final reading. A motion to reconsider was tabled.

Dealing with this situation, the Court said:

"The bill involved in the instant case was identical in caption and body with House Bill No. 1221. It was duly and regularly read once on three different days and passed each time in the Senate before being transmitted from that body to the House. It was duly and regularly read once, on two different days, and passed each time

in the House, being referred to as House Bill No. 1221. It was read and passed another and third day in the House, being referred to as Senate Bill No. 1158, before being transmitted from the House back to the Senate. It was read and passed on three different days in the Senate, as Senate Bill No. 1158. It was thus read and passed on three different days in the House, twice as House Bill No. 1221, and the third time as Senate Bill No. 1158, substituted. It received on its final passage in the House the assent of the majority of the members of the House. It was signed by the respective speakers in open session, and the fact of such signing was noted on the respective journals. It was thereafter duly signed and approved by the Governor. We think, therefore, that every requirement of section 18 of article 2 of the Constitution was complied with.''

About the only difference between the present case and the case of *Wilson* v. *State,* is that in this case the body of the Senate Bill and the House Bill on the same subject are not identical. That is an immaterial circumstance. The title of each bill was the same and it is the title that fixes the identity of the bill. ''All may be stricken out except the title and enacting clause and new provisions inserted quite different from those which first constituted the body of the bill.'' And so long as such new matter is germane to the title, the identity of the bill is preserved. *Erwin* v. *State,* 116 Tenn., 71.

In *Williams* v. *State,* 74 Tenn. (6 Lea), 549, a mere mistake in changing the number of a bill made in transmission from one House to another was held not to vitiate its passage, it appearing from the Journals that the same bill passed both Houses.

■ That portion of the Senate Journal "on motion Senate Bill No. 1045 was made to conform with House Bill No. 1236" records a superfluity and may be disregarded as surplusage. House Bill No. 1236 being substituted for Senate Bill on the same subject effected an amendment by substitution and no other steps were necessary to make the Senate Bill conform to the House Bill. *Railroad* v. *Memphis,* 126 Tenn., 267. Furthermore, the next entry, heretofore dwelt upon, shows that the bill which it was intended to conform to House Bill No. 1236 was the Senate Bill on the same subject.

■ It is argued that the intent of the Senate was to substitute House Bill No. 1236 for Senate Bill No. 1045 and not for Senate Bill No. 1046, because in the Senate Journal No. 1046 was referred to as a bill "to change the corporate limits of Memphis" while Senate Bill No. 1045 and House Bill No. 1236 each were referred to in the Senate Journal as a bill "to extend the corporate limits of Memphis." The two titles, however, are so similar that they lack distinctive implications and the use of one does not negative the conception of the other. Moreover a Journal title is merely an abbreviation and is not expected to be in entire and exact agreement with the title on the draft of the bill introduced for passage. *Nelson* v. *Haywood County, supra.*

We are referred to *State* v. *Wendler,* 94 Wis., 369, cited by this Court in *Heiskell* v. *Knox County,* 132 Tenn., 180, as in opposition to the views stated. In *State* v. *Wendler,* however, the Journal reference to the bill was by file number and its title also was "given at length." Under such circumstances the Court refused to hold that a bill referred to as "No. 258-A" was "No. 258-S" and

that the use of the wrong letter was palpably a clerical error. That case seems readily distinguishable.

■ The chancellor held that chapter 790 of the Acts of 1919, was a valid law and refused to look beyond the Journal and to the bills as originally introduced in the House and Senate. The propriety of the chancellor's action in declining to look further than the Journals has been much debated at the Bar. It is not necessary for us to examine this question.

The defendants insist that the practice of looking to the original bills is authorized by previous decisions of this Court and is proper. Such practice does appear to have been followed in a number of cases. *Archibald* v. *Clark,* 112 Tenn., 532; *Railroad* v. *Memphis,* 126 Tenn., 267; *State* v. *Persica,* 130 Tenn., 68; *Tennessee Coal, etc.,* v. *Hooper,* 131 Tenn., 611; *Heiskell* v. *Knox County,* 132 Tenn., 180; *Wilson* v. *State,* 143 Tenn., 55. The propriety of the practice does not seem to have been questioned or considered in any of these cases. In all of them the bills as originally introduced were looked to by way of sustaining the validity of the Acts in question. Such original bills have not been looked to by this Court by way of impeaching a Journal entry or the validity of any Act of the Legislature. Whether such practice is proper in any case, we need not decide. The result here is the same, whether we look to the original bills or refuse to go beyond the Journals.

■ It is also contended that chapter 790 of the Acts of 1919, is unconstitutional and in violation of section 17, Article II, of the Constitution on the ground that the caption does not indicate the subject of the legislation. The caption of the Act is ''an Act to extend and change the corporate limits of the City of Memphis in Shelby

County, Tennessee." The argument is that the caption does not indicate the nature, character, or boundaries of the extension—the territory to be added. This precise question was raised and fully considered in the case of *Forrester* v. *City of Memphis,* 159 Tenn., 16, 15 S. W. (2d), 739. A like objection to an Act under fire in that case was overruled by the Court and we are satisfied with the conclusion therein reached.

When the bill in this case was filed, June 8, 1922, there were pending in the Chancery Court in Memphis a number of other suits seeking the collection of delinquent taxes on various parcels of land involved in this case. Orders were entered herein consolidating the suits previously filed with the present suit in so far as the suits involved identical properties. More detailed reference to this matter will be hereinafter made and it is mentioned now preliminary to disposing of several general assignments of error filed by the defendants.

Assignment of error No. 1 is that the chancellor erred in overruling the demurrer of defendants and in not holding the old bills and alleged claims abandoned or barred by the six-years statute. In so far as this assignment need be noticed, it is sufficient to say that the chancellor did enforce the six-years statute as to all claims upon which suits had not been filed within the statutory period.

Assignment of error No. 2 is that the court erred in not dismissing this cause and those consolidated therewith for laches and in entering orders of consolidation.

The orders of consolidation were required by section 2 of chapter 115 of the Acts of 1921, providing that "If any other suits for delinquent taxes are pending against any particular piece of property, such suits shall be con-

solidated with the suit brought under the provisions of this Act, and to the end that all taxes for which any given piece of property is liable may be included in the final decree.''

■ As to laches, it has been recently held in *State* v. *McPhail*, 156 Tenn., 459, that a tax suit will not be dismissed for delay in its prosecution unless it is shown that the defendant sustained injury by reason of such delay. The defendants in this case assert that the delay has caused them injury but we do not see any injury in the sense of the law. Our attention is not called to any defense of which these property owners have been deprived by reason of delay, to any loss of material evidence formerly available, nor to any other substantial inconvenience they have suffered. We are, therefore, of opinion that the defense of laches was not well made.

Assignment of error No. 3 challenges the action of the chancellor in declining to consolidate another suit for delinquent taxes against certain of these defendants with the pending case. The chancellor found that the suit referred to did not involve any property which was involved in the present case and nothing to the contrary is shown to us on the brief.

■ The fourth assignment of error is that the chancellor erred in declining to consider off-sets to the various claims against defendants W. A. Collier and Alice T. Collier for City, County and State taxes. There was no error in this action of the chancellor. Claims which individuals may have against the State, the County, or the City cannot be set off against the claims of the State, County and City against such persons for taxes. *Moore* v. *Tate*, 87 Tenn., 725; *Scovel* v. *Nashville*, 3 Shan. Cas., 260.

422

Assignments of error No. 5 and No. 6 assert that the chancellor erred in allowing fees to the State Revenue Agent and his attorney who prosecuted this suit and permitting the Revenue Agent and his attorney to prosecute this suit because it is insisted that there is now no authority remaining in the Revenue Agent and his attorney to prosecute tax suits.

By chapter 7 of the Acts of 1923 (the Reorganization Act), the Department of Finance and Taxation was vested with the powers and duties of the State Comptroller and the State Revenue Agents with reference to the collection of back taxes. By chapter 77 of the Acts of 1923, a new method was ordained for the collection of delinquent taxes but section 15 of that Act expressly provided "that when suits have not been brought by the authority of the Comptroller and Revenue Agents under chapter 115 of the Acts of 1921, that the Comptroller shall restore the delinquent list of such counties to the County Trustee, etc., etc."

Chapter 109 of the Acts of 1923, repealed the earlier statutes creating the office of Revenue Agent and defining the duties of that official and provided for the appointment of auditors. It was enacted, however, in section 8 of that statute "that nothing in this Act shall be construed as to interfere with the prosecution of suits pending in any of the courts of this State for the collection of delinquent taxes, where such suits were instituted before February 1, 1923."

It therefore seems rather plain that the Legislature intended the various Acts of 1923 to have a prospective operation. At least there was no intention to interfere with the conduct of tax suits begun prior to February 1, 1923. This much was expressly declared. We are of

opinion, therefore, that the Revenue Agent and his attorney properly conducted the prosecution of the present suit which they had instituted June 8, 1922.

█ The seventh assignment of error is that the court erred in excluding practically all the testimony of W. A. Collier and Thomas B. Collier as to certain matters. This assignment of error must be overruled. Section 3 of Rule 14 of this Court provides that where an error is assigned as to the admission or rejection of evidence "the specification shall quote the full substance of the evidence admitted or rejected, with citation of record where the evidence and ruling may be found." There is no attempt to comply with this requirement.

Other assignments of a general nature are covered by what we have heretofore said or will be covered in the course of the opinion as we deal separately with the various cases consolidated herein.

█ Before leaving the general assignments of error we should perhaps notice assignment of error No. 11 under which it is insisted that the chancellor erred in not dismissing this suit and all consolidated causes because no distress warrants were ever issued or executed prior to the bills filed to reach the land. We are referred to *Nashville* v. *Cowan,* 78 Tenn., 209, and earlier cases and to an opinion of counsel adopted by the Superintendent of Taxation. This opinion apparently holds that distress warrants must be issued and a return made of no *personal property* before land can be subjected; that such a return is a jurisdictional prerequisite to proceedings against the land.

*Nashville* v. *Cowan,* and earlier decisions of this Court were based on statutes in force at the time. For instance, under section 612 of the Code of 1858, and chap-

ter 87 of the Acts of 1877, before the delinquent tax-payer's realty could be subjected, it was necessary that the tax collector make affidavit that he had made diligent search on the premises of the owner of the land for goods and chattels to distrain for taxes and had found none. *Nashville* v. *Cowan, supra.* Without undertaking to review the statutes, similar provisions persisted in our tax laws for a number of years.

Such provisions, however, were omitted from chapter 1 of the Acts of 1897, and perhaps earlier. At least since 1897 the issuance and return *nulla bona* of a dis-. tress warrant has not been prescribed as essential to the maintenance of the tax bill against land. The omission of a provision of this nature, present in our laws for many years and enforced by decisions of this Court, could only have been by design. While chapter 1 of the Acts of 1897 and other Acts, up to and including chapter 77 of the Acts of 1923, referred to by counsel for the Superintendent of Taxation, give to the tax books in the hands of the Trustee the force of an execution as to delinquent taxes and require the Trustee to proceed against the delinquent taxpayers by distress warrant and sale of personal property, none of these later Acts contain anything to the effect that such proceedings by the Trustee are prerequisite to tax suits to charge the land. On the contrary, tax suits to subject the land are required if the taxes have not been collected by dates specified. It is no doubt the duty of the Trustee under the later statutes to move against the taxpayer's personalty as set out. But it would be a strange construction of our legislation on the subject since 1897 to hold that the right of the State, County or City to enforce the tax lien upon land was prejudiced by the Trustee's failure in

this duty or was dependent upon the performance of this duty by the Trustee.

That would be a rewriting into our tax laws by the Court of provisions which the Legislature had purposely cut out.

STATE OF TENNESSEE *v.* W. J. MASSEY *et al.*, R. D. 19231.

The original bill in this suit was filed April 30, 1914, naming Alice T. Collier and her husband, ——— Collier, as defendants, among others. This suit, appearing to involve taxes on land, sought to be reached for a like purpose in the present case, was consolidated herewith. By the final decree the proceedings were dismissed as to Alice T. Collier but judgment rendered against W. A. Collier, subjecting his interest in the land.

The first assignment of error is that the decree against W. A. Collier was erroneous because he was not designated by his initials in R. D. 19231. W. A. Collier, however, was served with process. He filed no plea in abatement. Suing a defendant by a wrong name, or omitting his full name, is a matter of abatement only and will not avoid a judgment against him, if he has been actually served with process. An actual appearance is the equivalent of personal service within the meaning of this rule. *Hunter* v. *Swadley,* 141 Tenn., 156. It is also urged that R. D. 19231 should have been dismissed for laches. We have heretofore disposed of this contention.

It is again assigned for error that the mere notation of the number of R. D. 19231 on the bill, or rather on an exhibit attached to the bill, in the present case did not constitute a prosecution of the older case. As we have noted above, by order of court a number of older suits were consolidated with the present case in so far as they

involved the same pieces of property. In the orders of consolidation the older cases were referred to by rule docket numbers only. We take it that the point of the assignment of error which we are discussing is that the reference to the older cases in such a manner is not a sufficient designation of such cases for purposes of consolidation.

We think this objection is not well made. In the form of order given by Chancellor Gibson for the consolidation of causes, Chambliss' Gibson's Suits in Chancery, section 755, the several cases are referred to merely by style and by rule docket number. The style of a tax suit will rarely indicate anything in so far as a particular defendant is involved, because, under authority of statute, twenty-five defendants are ordinarily joined in such suits. A reference, therefore, to a tax suit by rule docket number seems about as adequate as a reference to such a case both by style and rule docket number. The test of propriety of consolidation of tax suits is the identity of property therein involved and we see no reason for holding an order of consolidation bad for the sole reason that it refers to the consolidated causes only by rule docket numbers.

Another assignment of error is that the descriptions in the assessments as such descriptions appear in the exhibit to the bill in R. D. 19231 and as they appear in one of the exhibits to the present bill do not sufficiently identify any parcel of land and are inadequate descriptions. Such descriptions appear to have been taken from the assessment rolls.

The premises are described in the exhibits just mentioned as follows:

"District 18; Acres 14.41; Central Avenue; M. V. C.; Highland."

"District 18; Acres 25.43; Central; Hugenot; M. V. C.; Evans."

The descriptions in these exhibits likewise show to whom the property was assessed.

At an earlier period, such descriptions would, perhaps, have been ruled inadequate and insufficient to be made the basis of a valid assessment. The defendants cite numerous authorities to this effect. We need only notice *Colligan* v. *Cooney,* 107 Tenn., 214, as an illustrative case. It was said in that case that a tax deed, in order to be valid, must contain such a description as would, without the aid of extraneous facts, designate with reasonable certainty the property sought to be conveyed, and it was held that an imperfect description in an assessment, upon which description a tax bill was based, could not be completed or aided by proof, so as to authorize a decree of sale fully and correctly describing the land.

Since the decision in this case, however, we have chapter 258 of the Acts of 1903, and chapter 602 of the Acts of 1907, under the last of which Acts the assessments herein were made. Section 7 of chapter 602 of the Acts of 1907, carried into Thompson's-Shannon's Code at section 776, provides rules for the description of real estate in assessments. Notwithstanding the rules laid down, section 7 concludes as follows:

"But a failure to assess according to this Act shall not in any wise vitiate the assessment or sale of lands under the same, and parol testimony shall always be admissible to supply a description of land on the assess-

ment roll or in conveyance for taxes, where such testimony will show what land was assessed and sold, and there is enough in the description on the roll or conveyance to be applied to a particular tract or parcel of land by aid of such testimony."

This statute changes the earlier rule. Under the statute, if there is enough in the description contained on the assessment roll to be applied by proof to a particular parcel of land the assessment is good. This is merely adopting into our tax laws the rule prevailing for the test of the sufficiency of a description of land under the Statute of Frauds.

Our cases were reviewed at length in *Case* v. *Brier Hill Collieries,* 145 Tenn., 1, and we there said "that a description of land is good within the Statute of Frauds which on its face appears to refer to some definite tract, and which by the aid of parol proof can with reasonable certainty be applied to designate such tract." This rule was stated with the qualification that the descriptive terms employed, together with the parol proof, must be such as to point out some especial parcel of land to the exclusion of any other parcel of land.

From the proof in this case, and really from inspection, it appears that a parcel of land belonging to a designated owner, in the 18th District of Shelby County, Tennessee, containing 14.41 acres, bounded by Central Avenue, M. V. C., and Highland, can be identified with certainty. That such description does not apply to any other parcel of land.

So a parcel of land in the 18th District of Shelby County, Tennessee, belonging to a designated owner, containing 25.43 acres and bounded by Central, Hugenot, M. V. C., and Evans, can be identified with certainty.

Such description does not apply to any other parcel of land. The description contained in the assessment of each of these parcels of land would be sufficient description in a conveyance of land between individuals. Under section 7 above quoted, such a description of a parcel of land on the assessment rolls is adequate.

 No constitutional rights of the taxpayers are invaded by such legislation as this.

The Supreme Court of the United States in *Winona, etc., Land Company* v. *Minnesota,* 159 U. S., 256, 40 L. Ed., 247, approved a statute of Minnesota which provided that no error or omission in the assessment proceedings should invalidate the tax unless it was made to appear that it resulted to the prejudice of the party objecting and that his taxes had on that account been unfairly or unduly assessed. It may be observed that no such contention on such account is made in the case before us.

Likewise the Supreme Court of California, in the case of *People* v. *Seymour,* 16 Calif., 332, has held valid a statute which made the fact of an assessment *prima-facie* proof that the assessment had been legally made. Numerous cases are collected in 37 Cyc., 1052, *et seq.,* which, apparently in the absence of any statute, hold that the taxpayer has no right to complain that all formalities connected with an assessment have not been strictly followed, if he has suffered no injury thereby. To the same effect see 26 R. C. L., p. 341. The chancellor expressly found herein that the appellants knew which pieces of property were involved and were not prejudiced by the lack of more complete descriptions on the assessment rolls. No substantial challenge of this conclusion of the chancellor is made.

In *Malone* v. *Williams,* 118 Tenn., 390, a section of chapter 51 of the Acts of 1907, providing a charter for Memphis contained a clause that—"No error or irregularity in any assessment, . . . shall in any manner affect or impair the validity of any sale or other proceeding for their (taxes') collection." It was said that the assessment is the foundation of the claim of the Government against the citizen for taxes and decided that—"A law providing that this sum shall be due no matter what error there may be in the assessment, is simply the means of placing the property of the citizen within the uncontrolled discretion of the persons who for the time being may wield the taxing power. It is therefore an instrumentality for taking the property of the citizen without due process of law, and is unconstitutional and void."

No reasonable similiarity can be urged between the language of section 7 of chapter 602 of the Acts of 1907, and the language of the Memphis charter bill used in the clause held invalid as above. *Malone* v. *Williams, supra,* is accordingly not in point.

It is furthermore complained that the court erroneously entered the order consolidating R. D. 19231 with the present case and improperly assumed that the same premises were involved in the two suits. We cannot agree with counsel in this contention. We think an inspection of the exhibits setting out the descriptions of the property involved in the two suits shows the identity of the same.

STATE OF TENNESSEE *v.* MAMIE E. BURNELL *et al.,* R. D. 20602.

Assignments of error in this case raise the question of laches, attack the order of consolidation on account

of the reference to the earlier cause by the rule docket number alone, and challenge the sufficiency of the description of the land in the exhibits to the bills copied from the assessment rolls. Observations heretofore made are sufficient replies to these assignments of error.

It is also assigned as error that the court below erred in admitting extraneous evidence to supply the descriptions and to cure the defects therein and in entering final decree with descriptions other than in the assessment rolls and exhibits to the bills. It is sufficient to say that the statute expressly authorizes the introduction of such proof if there is enough in the description on the assessment rolls to be applied to a particular parcel of land by aid of such testimony. Without quoting the description in this case, it appears on its face to refer to a definite parcel of land, and is not so indefinite as to be applicable to other parcels of land, and the evidence introduced was competent and made the description certain. Such proof was not without pleadings to support it. The proof merely elaborated, rendered more easily applicable, as well as established the averments contained in the exhibits to the bills. A decree based on such pleadings and proof was proper.

## EXHIBIT 3 TO BILL IN THE PRESENT CASE

 The assignment is to the effect that the court erred in sustaining the lien and claim for the City of Memphis taxes without any assessment or description set out on which to base same. The proposition seems to be that the City of Memphis, having its own tax assessing officials and records, appears to base its cause of action on records offered in support of the claims of the State and County.

Exhibit No. 3 is a statement of delinquent taxes containing a description of property (although in challenged form) followed by a statement of State and County taxes and then a statement of city taxes. The bill charges that defendants are indebted to the State and to the County of Shelby and the City of Memphis for taxes duly assessed and levied according to law and that the exhibit shows the assessments for each year together with the amount due thereon. Exhibit 3 purports to contain a description of the property as assessed by the City as well as by the State and County. If the City described the property on its assessment rolls in a manner different from that stated in the exhibit, it was incumbent upon the defendants to show such variance.

"In support of an assessment of taxes, it will be presumed that it is valid, regular and correct and that various officers charged with the making of the assessment all performed their duties in good faith and at the proper time and in conformity with the statutes and that other various Acts were legal and proper; and this presumption will stand until overcome by satisfactory evidence to the contrary." 37 Cyc., 1069.

To the same effect as the foregoing are observations of this Court in *Louisville & Nashville R. Co.* v. *State of Tennessee, et al.,* 55 Tenn. (8 Heisk.), 663.

It is complained under this heading that the figures showing the valuations and amounts of taxes in the statement are not preceded by dollar marks. This is a mistake. The dollar mark is printed just before the figures in each column.

The questions raised in other assignments of error under this heading have been previously considered.

STATE OF TENNESSEE *v.* ELVA SHAKELARIS *et al.,* R. D. 20608; STATE OF TENNESSEE *v.* HERMAN ANDERSON *cl al.,* R. D. 21881; STATE OF TENNESSEE *v.* W. A. COLLIER *et al.,* R. D. 23507; STATE OF TENNESSEE *v.* W. A. COLLIER AND ALICE T. COLLIER, R. D. 23508; STATE OF TENNESSEE *v.* WARREN BROWN, R. D. 24209.

A separate discussion of these assignments of error made in these cases is not necessary. Elsewhere in the opinion we consider all the points made in the assignments of error herein and find that none of them are well made.

STATE OF TENNESSEE *v.* ALICE T. COLLIER *et al.,* R. D. 21886; STATE OF TENNESSEE *v.* J. A. SIGNAIGO *et al.,* R. D. 21951.

The assignments of error in these cases, in so far as they require separate treatment, may be considered along with the assignments of error made by defendant Thomas B. Collier as to the action of the Court in allowing an amendment to the bill in the present case making him a party.

R. D. 21886 and R. D. 21951 were suits brought to enforce the payment of front foot assessments for improvement of streets adjacent to the lot involved. In the first case Alice T. Collier was named as owner of the property. In the second case Alice T. Collier and W. A. Collier were named as owners of the property. It turned out that Thomas B. Collier was the owner of the property, claiming under registered deed, at the time of the assessment, and, as stated above, an amended bill was filed in the present cause making him a defendant.

A demurrer was interposed by Thomas B. Collier to this amended bill pointing out that said bill naming him as a party was filed more than six years after the taxes involved had accrued and relying on the six-year statute of limitations as to tax suits. This demurrer was overruled by the chancellor.

The disposition of the question raised by this demurrer necessitates a consideration of the nature of suits brought under Tennessee statutes to subject land to the payment of delinquent taxes levied thereon. Section 31 of chapter 602 of the Acts of 1907, contains the following:

"The assessed taxes on all real estate, personalty, railroad, telegraph and telephone companies, and all damages and costs accruing thereon shall be and remain a first lien upon such property from the tenth of January of each and every year for the taxes of that year; and said taxes shall be a lien upon the fee in said property, and not merely upon the interest of the person to whom said property is or ought to be assessed, but to any and all other interests in said property, whether in reversion or remainder or of lienors, or of any nature whatever, and the whole proceeding for collection of taxes from the assessment to sale for delinquent shall be a proceeding *in rem,* and shall not be invalid on account of such land having been listed or assessed for taxation to any one as owner or owners or to any person not the owner or owners or to unknown owner or owners."

A sale of the land under section 2, chapter 115 of the Acts of 1921, is directed upon a credit of not less than six months and in bar of the equity of redemption. "And the purchaser of such sale, after complying therewith and paying all the purchase money, shall be entitled to a decree vesting the title in him absolutely against the

owner and against all liens for taxes of any nature whatever, which could have been presented in the cause." In order that the purchaser may obtain a title free from all liens for taxes of any nature whatever, the Revenue Agent is directed to include in the bill all delinquent taxes and penalties whether the same be State, County or municipal. The assessments for street improvements here sued for appear to have been duly levied under authority of chapter 341 of the Acts of 1907 and under the provisions of that Act such assessments constituted a lien upon the abutting property. The Revenue Agent therefore properly sued for these assessments.

"The whole proceeding for collection of taxes from the assessment to sale for delinquent (taxes) shall be a proceeding *in rem*." The effect of this statutory mandate has been considered in *Hadley* v. *Hadley*, 114 Tenn., 156; *State* v. *Patterson*, 155 Tenn., 169; *State* v. *McPhail*, 156 Tenn., 459, and other cases.

The form of procedure under chapter 602 of the Acts of 1907, for the subjection of land to delinquent taxes is outlined in chapter 37 of the Acts of 1911, and chapter 115 of the Acts of 1921. The two statutes prescribe essentially the same procedure.

Section 2 of the latter Act provides, in the event such taxes with interest and penalties are not paid, etc., it shall be the duty of the Comptroller, through the Revenue Agent, to file bills in Chancery Court for the purpose of enforcing the lien for taxes. Said bills are to be filed in the name of the State for the use of the State, County and municipality "and shall show by proper averments and exhibits the name of the party or parties to whom the property was assessed for the year or years for

which the taxes claimed are delinquent." The statute then continues:

"Said suit shall be conducted in accordance with the practice in Courts of Chancery in this State, except that no copy of the bill shall be issued by the Clerk except to a defendant demanding such copy and paying therefor; and in such suit there may be included as many as twenty-five distinct pieces or tracts of land, the owners thereof being made defendants to the bill, and such suit shall not be subject to objection for misjoinder by reason of the distinct interest which the several defendants have in the property proceeded against, and the Court is authorized and empowered, if such relief is warranted by the law and the facts, to enforce the lien for taxes by sale of the property upon a credit of not less than six months and in bar of the equity of redemption; and the purchaser at such sale after complying therewith and paying all the purchase money shall be entitled to a decree vesting the title in him absolutely against the owner and against all liens for taxes of any nature whatever, which could have been presented in the cause."

In an action *in rem* the Court acquires jurisdiction of the property by its seizure and all those having an interest in the property are deemed to have constructive notice of its seizure and are considered parties to the suit. *State* v. *Patterson, supra,* citing *The Mary,* 9 Cranch, 126, 3 L. Ed., 678, and Freeman on Judgments (5 Ed.), section 1543. See, also, Freeman on Judgments, section 1517, *et seq.,* and *Tyler* v. *Judges of Court of Registration,* 175 Mass., 71, 51 L. R. A., 433.

Whether or not seizure of the property alone, without further notice, authorizes the Court to proceed to judg-

ment is a question upon which there is a conflict of authority. See, cases collected in a note 50 L. R. A., 597.

The Supreme Court of the United States has committed itself to these ideas.

''A sentence rendered simply from the fact of seizure would not be a judicial determination of the question of forfeiture, but a mere arbitrary edict of the judicial officer. The seizure in a suit *in rem* only brings the property seized within the custody of the court, and informs the owner of that fact. The theory of the law is, that all property is in the possession of its owner, in person or by agent, and that its seizure will therefore operate to impart notice to him. Where notice is thus given, the owner has the right to appear and be heard respecting the charges for which the forfeiture is claimed. That right must be recognized and its exercise allowed before the court can proceed beyond the seizure to judgment. The jurisdiction acquired by the seizure is, not to pass upon the question of forfeiture absolutely, but to pass upon that question after opportunity has been afforded to its owner and parties interested to appear and be heard upon the charges. To this end some notification of the proceedings, beyond that arising from the seizure, prescribing the time within which the appearance must be made, is essential. Such notification is usually given by monition, public proclamation, or publication in some other form. The manner of the notification is immaterial, but the notification itself is indispensable.'' Freeman on Judgments (5 Ed.), section 1530, based on decisions of the United States Supreme Court.

Our tax laws appear to be based on the views of the Supreme Court of the United States just quoted. The notification or monition provided by chapter 115 of the

Acts of 1921, is that "said suit shall be conducted in accordance with the practice in Courts of Chancery in this State." That is, a summons shall issue as to those named as defendants or publication shall be made for them, as the circumstances indicate. Those interested, however, are not made parties by the service of process or by publication. They are parties before either of these things are done—made such by the seizure of property in which they had an interest. The function of process in cases like the one before us is fundamentally different from that of process essential to jurisdiction in an action *in personam*. *Thompson* v. *The Julius D. Morton*, 2 Ohio State, 30, 59 Am. Dec., 658.

"Proceedings of this nature are not usually proceedings against parties, nor, in the case of lands or interests in lands belonging to persons unknown, can they be. They are proceedings which have regard to the land itself rather than to the owners of the land, and if the owners are named in the proceedings and personal notice is provided for, it is rather from tenderness to their interests, and in order to make sure that the opportunity for a hearing is not lost to them, than from any necessity that the case shall assume that form." Cooley on Taxation (4 Ed.), section 1405.

So while Thomas B. Collier was not named as a defendant to R. D. 21886, R. D. 21951, nor to the present case, the actions being *in rem*, he became a party by reason of the seizure of his land. It is true, as a general proposition, that he would have been entitled, by way of monition, to service of process before a decree against his land. Thomas B. Collier, however, made an appearance and participated generally in the defense both of the old cases and of the present suit. The fact that he

was not made a formal defendant to the old cases was accordingly immaterial. Likewise the fact that he was served with no formal notice. *Bailey* v. *Sundberg,* 49 Fed., 583; *The Harrogate,* 112 Fed., 1019. Such an appearance indeed would have been an entire waiver of process even in an action *in personam.* Chambliss' Gibson's Suits in Chancery, section 224.

"Defects in obtaining jurisdiction to enforce against real estate the collection of delinquent taxes are waived where the owner of the property against which enforcement is sought appears and objects to the assessment." Cooley on Taxation (4 Ed.), section 1404.

The bill in the present case covered the taxes for which suit was brought in R. D. 21886 and R. D. 21951. Thomas B. Collier joined with W. A. Collier, Alice T. Collier and Trezevant Collier in a joint answer to the bill herein. In this answer he denied "that there was ever any assessment giving a correct and sufficient description of the property, its location and ownership, to make a valid and legal assessment." He further asked that the old bills referred to in the exhibits to the present bill "if said bills have been in fact filed, and are now pending, . . . be dismissed at complainant's cost." He also sought in this answer to have complainant elect whether it would "prosecute those (the old) bills or the present one for the collection of said taxes."

Thomas B. Collier likewise joined in exceptions to the orders consolidating the old tax suits with the present suit and, as the record indicates, otherwise participated in the common defense.

There can then be no doubt of the general appearance of Thomas B. Collier in this litigation. He being an owner of lands seized and the action being *in rem,* he be-

440

came a party from the filing of the bills. The filing of the bills and the seizure of the property arrested the running of the Statute of Limitations and the appearance of Thomas B. Collier waived service of process—made such service immaterial.

*State* v. *McPhail, supra,* is directly in point. The defendant Nisserson was not served with process but made his appearance urging that the suit be dismissed as to him for laches in its prosecution. The suit being *in rem,* the Court held that in legal contemplation Nisserson was a party thereto, and having made his appearance, when the Court overruled his plea of laches, the case was remanded for further proceedings and judgment.

So far as the present case is concerned, as heretofore stated, Thomas B. Collier made his appearance and demurred to the amended bill. We have especially considered his appearance in the old cases and the effect thereof inasmuch as this ruling is conclusive of questions raised by certain of the State's assignments of error, to be hereafter discussed, and other assignments of defendants.

Thomas B. Collier also raises the question of the authority of the Revenue Agent through his attorney to proceed in this case under chapter 115 of the Acts of 1921, which we have previously discussed. In this connection, however, it seems proper to take up the defendants' general assignment of error No. 15 which complains of the action of the Court in ordering a reference for any taxes claimed other than those alleged in the bill herein, T. R. D. No. 197, and in allowing fees based upon the recovery of taxes subsequent to taxes for the year 1920. We think the decree of the Chancellor must be modified in this respect. By section 15 of chapter

77 of the Acts of 1923, heretofore mentioned, the Comptroller was required to restore to the County Trustees the delinquent tax lists when suits had not been brought by the Revenue Agents under chapter 115 of the Acts of 1921. Chapter 109 of the Acts of 1923, which abolished offices of the Revenue Agents, provided that the Act should not be construed so as to interfere with the prosecution of pending suits for the collection of delinquent taxes, where such suits were instituted before February 1, 1923. Reading these two Acts of 1923 together, their effect was to require the Comptroller to restore to the County Trustees delinquent tax lists in so far as suit had not been brought prior to February 1, 1923, to recover such delinquent taxes.

Before February 1, 1923, no suit for delinquent taxes on the property herein involved had been brought by the Revenue Agents for taxes assessed for any year later than 1920. Consequently it was the duty of the Comptroller to restore to the County Trustees any delinquent tax lists in his hands for any year later than 1920—the Trustees then to proceed with their collection as required by chapter 77 of the Acts of 1923. After the passage of chapter 77 of the Acts of 1923, the delinquent lists were not sent to the Comptroller and that Act provided how they should be handled.

The legislation of 1923 saved to the Revenue Agents the prosecution of suits brought prior to February 1, 1923. Except for the prosecution of these suits, the functions of the Revenue Agents were abolished in 1923 and there was no authority left in such officials to enforce the payment of taxes not sued for before February 1, 1923. We are of opinion therefore that no fees can be allowed to the Revenue Agent or his attorney for the

442

collection of any taxes subsequent to 1920 taxes herein.
 Nevertheless it does not follow that the Chancellor erred in ordering a reference to ascertain the amount of taxes due on the property at present. Such action on his part was required by the general statute, section 969, Thompson's-Shannon's Code. That statute provides that "whenever real estate is sold under a decree of any Court in the State" it shall be the duty of the Court before confirmation to have a reference made to ascertain if upon the day of sale there were any taxes due and unpaid which were a lien upon said real estate. If any such taxes are found, they are to be paid out of the proceeds of the sale. The language of section 969, Thompson's-Shannon's Code, permits of no exceptions and we think the application of this section of the Code is no less certain because the sale of the land herein is ordered at the suit of the State and for taxes rather than upon the suit of an individual and in the enforcement of some other lien. Ordinarily the collection of taxes not sued for by the Revenue Agents prior to February 1, 1923, would be proceeded with according to the provisions of the Acts of 1923. Section 969, Thompson's-Shannon's Code, provides for the payment of the taxes reported on the reference, together with "interest, penalties and costs that are at that date a lien upon said land, etc." Interest, penalties and costs should be computed under chapter 77 of the Acts of 1923. That Act applied to all taxes for which suit had not been brought prior to February 1 of that year. The bill herein was filed under chapter 115 of the Acts of 1921, and the sale should be ordered under that Act, on a credit of not less than six months and in bar of the equity of redemption. The reference for taxes subsequent to 1920 taxes is incidental. Costs under this

reference, as to taxes subsequent to 1920, go to those entitled to such costs under the Acts of 1923.

 Some complaint is made by the defendants as to the allowance of a fee to the attorney representing the Revenue Agent herein, because it is said that he was a salaried employee of the City of Memphis. The defendants have no real interest in this matter. If the Revenue Agent had not employed this particular attorney he would have employed another. The fees of the attorney are regulated by law and it can make no difference to the defendants what attorney gets these fees. Moreover the attorney in this matter acts as attorney for the Revenue Agent and as the employee of the Revenue Agent, not as an employee of the City.

The defendants have set out in their assignments of error the descriptions of the various parcels of land herein involved, none of which descriptions they say were sufficient to be the basis of a valid assessment. It would be impracticable to take up each of these descriptions and discuss it separately. We have examined all of them. Some of the descriptions are better than the two heretofore set out and commented upon in the opinion. Some of them are not so good. We think there is enough in each of the descriptions, however, to identify a particular parcel of land by the aid of competent testimony and to the exclusion of any other parcel of land. This is sufficient.

## STATE'S ASSIGNMENTS OF ERROR.

The State for its own use and the use of the County and City appealed from the decree of the Chancellor and has assigned numerous errors which have been grouped under eight propositions.

 The first proposition is that the Court erred in refusing a decree against certain nonresident defendants, for whom publication had been made and against whom *pro confesso* decrees had been taken—this apparently because no process was served upon such defendants. This proposition is well made. As appears from our previous discussion, the form of monition to defendants whose property has been seized is immaterial, whether by service of process or by publication. These assignments of error are accordingly sustained.

 The next proposition advanced on behalf of the State is that chapter 24 of the Acts of 1885, the Statute of Limitations against taxes, is unconstitutional in that the subject of the Act is not expressed in its title in violation of section 17 of Article II of the Constitution. Said Act follows:

"An Act to regulate the time of collection of taxes.

"Section 1. Be it enacted by the General Assembly of the State of Tennessee, that all State, County, school, railroad and municipal taxes assessed on property, and all State, County, or municipal taxes, and all poll taxes that hereafter fall due shall be barred, and any lien for such taxes be canceled and extinguished, unless the same are collected or suits for the collection shall have been instituted within six years from the 1st of January of the year for which such taxes accrued.

"Section 2. Be it further enacted that it shall be the duty of the Court, in which proceeding, concerning the collection of taxes, may be brought where the same shall be barred under the provision of the first section of this Act, when this statute is pleaded and the truth of the plea appears to the satisfaction of the Court, to dismiss the cause, and order that the officer having the respective

tax books in charge, enter thereon opposite the name of the taxpayer a memorandum of the judgment of the Court.''.

Plainly this statute undertakes to bar the remedy for the collection of taxes and to extinguish the right to collect taxes unless the same are collected or suits brought for collection within six years from January 1st of the year of their accrual.

The argument is that the title indicates an Act regulating the collection of taxes but it is said the body of the Act, as a matter of fact, provides for the extinction of the tax claim and tax lien. Furthermore it is said that the title to the Act is altogether deceptive. That one reading the title would get the idea that the Act was to regulate or fix the time when the payment of taxes was to be made, that is, when the collecting officer was supposed to gather in the taxes from the taxpayer. It is submitted that no one reading the title of this Act would conclude that the body of the Act was to be a measure whereby taxes were avoided.

This argument is quite strong and the Court might have been inclined to yield thereto at an earlier date. But chapter 24 of the Acts of 1885 has been on our statute books and supposed to be the law for more than forty years. Very important rights have been based on the assumed validity of this statute. No estimate could be formed of the number of titles to land that have been passed as clear from liens on the idea that unpaid taxes, appearing not to have been sued for nor collected within six years from the first day of the year they accrued, were barred. The Court cannot at this late day hear an attack upon the validity of this statute for a formal defect.

446

██ "It is a doctrine of the law that when Acts have been long treated by the Court as constitutional, and important rights have been based thereon, it may refuse to further consider the question." *Telephone Co.* v. *Telephone Co.*, 125 Tenn., 278; *State ex rel.* v. *Baseball Club*, 127 Tenn., 292.

For the reasons indicated, this seems a case for the necessary application of the rule quoted.

██ The next proposition is that chapter 24 of the Acts of 1885, was expressly repealed by chapter 1 of the Acts of 1897, and by chapter 2 of the Acts of 1887, and by intervening Acts.

Counsel say that the Act of 1897 was entitled as one "to repeal all laws in conflict with the provisions of this Act whereby revenue is collected from the assessment of real estate, personal property, privileges and polls," and that section 89 repeals all laws in conflict "upon the subject of the assessment and collection of taxes and the sale of land for taxes." That the Act of 1887 was entitled as one "to repeal all laws now in force whereby revenue is collected from the assessment of real estate, personal property, privileges and polls," and that section 84, the repealing clause, was similar to the repealing clause in the Act of 1897. That the reference in the repealing clauses of these Acts to other Acts whereby revenue "is collected from the assessment of real estate" was an apt reference to the substance of chapter 24 of the Acts of 1885 and accomplished an express repeal thereof.

We cannot agree to this contention. Counsel's own argument upon the proposition that the body of chapter 24 of the Acts of 1885, is not covered by its caption shows that this Act was not one whereby revenue was to be

collected from the assessment of real estate. On the contrary, its purpose was to bar the collection of such revenue and to extinguish the claim and lien therefor. There was accordingly no such reference in the later Acts to the substance of chapter 24 of the Acts of 1885, as is necessary in statutes purporting to expressly repeal earlier statutes.

Again it is insisted by counsel that if chapter 24 of the Acts of 1885, has not been expressly repealed, subsequent legislation has repealed it by necessary implication. The Court has been favored with an able and entertaining review of our tax legislation, both in brief and argument, by way of setting up this theory.

It is pointed out that prior to chapter 24 of the Acts of 1885, there was no limitation upon the tax lien, citing various statutes and *Mayor, etc., of Nashville* v. *Lee,* 80 Tenn. (12 Lea), 542; that since the Act of 1885, by chapter 1 of the Acts of 1897, chapter 435 of the Acts of 1899, chapter 174 of the Acts of 1901, chapter 758 of the Acts of 1903, chapter 602 of the Acts of 1907, and chapter 115 of the Acts of 1921, it is provided that taxes shall "be and remain a lien" on the land. It is argued that the language just quoted, appearing in Acts subsequent to the Act of 1885, is inconsistent and repugnant to the provision of the former Act that delinquent taxes not sued for nor collected within six years shall be canceled and extinguished, and a repeal by implication thus effected. This argument is pressed with much ingenuity. We cannot undertake to meet the details of the argument, owing to its length, but must dispose of it by the application of a few well settled principles of statutory construction.

 It is, of course, settled that repeals by implication are not favored and nothing short of an irreconcilable conflict between the two statutes works such a repeal. *Home Bldg. & Loan Asso.* v. *Graham,* 155 Tenn., 524; *McCord* v. *Marshall County,* 152 Tenn., 675.

There is a certain antagonism between all rights and remedies on the one hand and statutes of limitation on the other hand. Ordinarily the former would persist were it not for the latter. The antagonism, however, does not destroy either. The period for the exercise of rights and remedies, otherwise indefinite, is merely restricted by statutes of limitation.

 It is also fully established that a general law does not by implication repeal a special law unless such legislative intent clearly appears. *Camden Fire Ins. Asso.* v. *Haston,* 153 Tenn., 675; *Vertrees* v. *State Board of Elections,* 141 Tenn., 645; *McCampbell* v. *State,* 116 Tenn., 98.

 If for the sake of the argument it be conceded that chapter 24 of the Acts of 1885, was upon the same subject as the various Acts mentioned above and said to accomplish its repeal by implication, that is, if the Act of 1885 be regarded as a revenue or assessment Act, nevertheless it is a special Act and the other Acts are general in their nature.

But, as we have seen, chapter 24 of the Acts of 1885, is not upon the same subject as those other Acts. The purpose of the other Acts is the assessment and collection of revenue. The Act of 1885 has a different purview and a different objective. Its purpose, to again use the language of counsel, is to extinguish revenue.

"One statute is not repugnant to another unless they relate to the same subject and are enacted for the same purpose. It is not enough that there is a discrepancy

between different parts of a system of legislation on the same general subject; there must be conflict between different Acts on the same specific subject. When there is a difference in the whole purview of two statutes apparently relating to the same subject, the former is not repealed. Such is the general doctrine in which all the cases concur." Lewis' Sutherland on Statutory Construction (2 Ed.), section 247, and cases cited.

The laws relied on as effecting a repeal by implication of chapter 24 of the Acts of 1885, or some of them, may be taken as revisions of earlier laws for the collection of revenue and assessment laws, of earlier laws for the benefit of the Government, State, County and municipal. It may be conceded, too, that some of them undertake to cover the whole subject of which they treat.

Chapter 24 of the Acts of 1885, as before stated, is not a law providing for the collection of revenue nor an assessment law and a revisal of such laws does not reach it. The Act of 1885 was a law passed for the benefit of the taxpayer. It is the only statute of its kind to which our attention has been called. It stands in a class by itself. It evinces a distinct legislative purpose, from which purpose we do not believe any subsequent Legislature has intended to depart.

We do not think the change in the character of tax suits, from actions *in personam* to actions *in rem*, ordained by chapter 1 of the Acts of 1897, at all impaired the efficacy of chapter 24 of the Acts of 1885. If the Act of 1885 related alone to the remedy for the collection of taxes prevailing prior to the Act of 1897, it might with more plausibility be argued that the former Act was not applicable to the new remedy. The language of the Act of 1885, however, satisfies us that it was the intention

of the Legislature to extinguish the right to collect taxes and to extinguish the lien for the same after the designated period, and the form of remedy prescribed by the Legislature is not material.

Another argument is that since under chapter 1 of the Acts of 1897 and under later Acts for some years, there was no provision for tax suits, but another procedure for the collection of delinquent land taxes was prescribed, no room was left for the enforcement of chapter 24 of the Acts of 1885, and it should be held to have been repealed by implication. This, however, is a mistake. Section 969, Thompson's-Shannon's Code, was in force all the while, and under a reference as to unpaid taxes preceding the confirmation of a court sale, chapter 24 of the Acts of 1885, was always available and in common use. Likewise, we take it that if the Trustee had delayed proceedings to enforce the tax lien authorized by the Act of 1897 for more than six years, such proceedings could have been arrested or vacated by setting up the Act of 1885 in a petition for *certiorari* or otherwise.

It is said under proposition 4 that chapter 1 of the Acts of 1897, and subsequent Acts through chapter 602 of the Acts of 1907, provided for sales of land for delinquent taxes by the County Trustee, the lands to be struck off to the State Treasurer in default of a private bid amounting to the sum of the accrued taxes, interest, penalties and costs. It is therefore said that these sales to the State Treasurer enforced collection of the taxes in lieu of payment by the taxpayer, that the taxes were thus *collected* by this procedure and taken out of the bar of chapter 24 of the Acts of 1885. If no further proceedings were taken for the collection of taxes upon land

bid in by the State Treasurer, there would be no occasion to invoke the Act of 1885. The State, however, cannot insist that the taxes are already collected and at the same time maintain a bill for their collection.

We have largely covered proposition 5 and proposition 6 advanced by counsel for the State in our previous discussion of the assignments of error made by Thomas B. Collier.

It is maintained under these heads that these tax suits being actions *in rem* the Court had jurisdiction to order a sale of land to enforce the lien for taxes irrespective of service of process. This, as we have held, is true if the persons named as defendants participated in the defense and thus waived the monition of process.

We do not agree, however, that all liens accruing within the statutory period before the filing of the bill, for taxes not specifically sued for, could be enforced in such a suit. It is true that Thompson's-Shannon's Code, section 969, directs that a reference be had to ascertain what taxes are unpaid and a lien on the land, and that payment of all such taxes shall be ordered. Under section 969, however, the reference is to be taken as to taxes which are a lien on the land upon the *day of sale,* not as to taxes which were a lien on the land upon the day the bill was filed. The only taxes therefore, not specifically sued for, collectible under this statutory reference, are those which are a lien—not canceled and extinguished—on the day of sale. Taxes not specifically sued for cannot be recovered under section 969 if they are barred on the day of sale.

The points raised in proposition 7 and proposition 8 have been previously covered.

Some other things have been complained of by each side which we have considered but they do not require discussion. Except as herein indicated, the decree of the Chancellor will be affirmed and the cause remanded for further proceedings. The costs of appeal will be divided and the costs below fixed by the Chancellor.