STATE, for Use of CITY OF CHATTANOOGA, v.
BAYLESS et al.—209 S. W. (2d) 504.

Eastern Section.   Nov. 24, 1947.

Petition. for Certiorari denied by Supreme Court, February 28, 1948.

622

B. Z. Tabb, of Chattanooga, for State of Tennessee, etc.

Charles C. Moore, of Chattanooga, pro se.

McAMIS, J.  This case presents a contest between the City of Chattanooga and Charles C. Moore, the present owner of the south portion of Lot 2 on Market Staeet in Chattanooga, as to the liability of the property owner for 1930 taxes.  The Chancellor granted a recovery for the principal amount of the taxes but denied the City the right to collect interest, penalty and attorney's fees. From this decree both parties have appealed.

Suit was brought by the City in the Chancery Court of Hamilton County on April 22, 1932 to collect 1930 taxes.  The bill named as defendants W. S. Beck, Trustee, as the owner of the south portion of said Lot 2, and twenty-five other property owners.

On July 21, 1930, W. S. Beck, Trustee, conveyed the lot to the present owner, Charles C. Moore, the deed reciting "grantee assumes 1930 taxes".  The record does not reveal that process issued for W. S. Beck, Trustee, between the date of the filing of the bill and November 10, 1932, when a pro confesso was entered against him, but the pro confesso recites that he was regularly before the court by service of process and, having failed to appear and make defense, the bill was taken as confessed and the cause set for hearing ex parte.

No further action was taken in the case until the City moved for alias process for W. S. Beck on August 6,

1941. A subpoena thereupon issued and was returned August 28, 1941, showing that W. S. Beck was then deceased. On November 18, 1941, the City filed an amended bill against Charles C. Moore as the owner of the lot but the amended bill was dismissed because it was filed without the court's permission. Charles C. Moore was finally brought before the court on January 22, 1943 and filed an answer denying liability for various reasons to be noted.

Mr. Moore's first assignment of error is that the Chancellor erred in holding that Chapter 548 of the Private Acts of 1919, amending the charter of the City of Chattanooga, was not mandatory on the Board of Commissioners of said City, in the requirement of said Act that the City follow in the collection of taxes the procedure therein outlined. Assignments two and three complain of the holding of the Chancellor that the City of Chattanooga could legally assess taxes without the appointment of a Tax Assessor as provided in said Act and that it could maintain the present action without first issuing a distress against W. S. Beck, Trustee, and having a nulla bona return thereon.

Chapter 548 of the Private Acts of 1919 amended the charter of the City of Chattanooga to provide that: "The assessments shall be made under the laws by which such property is assessed for State and county purposes, except as herein modified, but by an assessor to be elected by the Board of Commissioners of said corporation, who shall have the same powers as are conferred by law upon assessors of State and county taxes. . . ." The Act contains other provisions requiring the issuance of a distress warrant before instituting a suit to enforce the payment of municipal taxes.

By Chapter 46 of the Private Acts of 1929 the charter was again amended in respect to the assessment and collection of taxes due the City. By that Act provision is made for the selection of a tax attorney by the Mayor and for the institution of suit for the collection of taxes, to assert the liens therefor, and providing that: "said suits when filed shall be subject to the same laws and procedure which govern suits for the collection of delinquent State and County taxes. . . ."

██ It is noted that the 1929 Act is silent as to any requirement for the issuance of a distress warrant preliminary to the institution of suit and we think the provision that such suits were to be proceeded with under the same laws and procedure which govern suit for collection of delinquent state and county taxes superseded the requirement of the 1919 Act in that respect. That a distress warrant is not necessary under the general law was expressly held in State ex rel. v. Collier, 160 Tenn. 403, 406, 23 S. W. (2d) 897.

█ We think the person selected by the Board to make assessments from the books of the County Tax Assessor's record acted de facto as the City Tax Assessor required by the 1919 Act. Both the City and the taxpayer here involved seem to have treated assessments made on other properties by this method valid and the court should be slow at this late date to declare an assessment made in that manner, long acquiesced in by all parties, invalid.

██ We think there is no merit in the insistence that the claim here asserted is barred by the six year statute of limitations, Code, Sec. 1494. For a great part of the period between the institution of suit and the filing of the amended bill making the defendant a party to the suit a tax moratorium was in effect in Ten-

nessee. Aside from this, however, suit was instituted within three years of the tax delinquency against the record owner of the property at the time the assessment became a lien on the property. The proceeding is one in rem and we think the institution of suit against the prior owner prevented the running of the statute. It is insisted the action of the City to collect its taxes is not a proceeding in rem but an action in personam. We are not cited to any authority to sustain this position. There is no question that the City has a lien upon the property for the amount due it as taxes and we think it follows that a suit to enforce its lien is necessarily a proceeding in rem.

We conclude there was no error in rendering a decree against the taxpayer for the principal amounts of the taxes due. We next consider the insistence of the City that the court erred in remitting interest, penalty and attorney's fees.

We think the Chancellor was right in exercising his discretion as to the imposition of the penalty and the addition of interest. The City, despite the moratorium acts, could have proceeded against the property here involved within a much shorter period. Instead, it allowed the suit to remain in court for a period of approximately fifteen years and until the interest and penalty will far exceed the amount of taxes due.

By Chapter 71, Acts of 1943, now Code, Section 1591.1, Chancellors are given discretionary power to dismiss tax suits for laches or failure to prosecute within three years from the date of the filing of this suit. In this case instead of dismissing the suit, the Chancellor merely remitted interest, penalty and attorney's fees. As to the interest and penalty this action is in line with

the power of a court of equity to give equitable relief against the enforcement of tax penalties under meritorious conditions. See General Petroleum Corporation of California v. Smith, 62 Ariz. 239, 157 P. (2d) 356, 158 A. L. R. 364, 369 and cases there cited and compare Hadley v. Hadley, 114 Tenn. 156, 176, 87 S. W. 250.

■ However, a different rule governs the allowance of attorney's fees, the rule being that when a delinquent tax attorney files suit under the statute the right to attorney's fees becomes fixed. State ex rel. v. Allen et al., 176 Tenn. 670, 145 S. W. (2d) 769.

The decree of the Chancellor is in all respects affirmed except to the item of attorney's fees and if counsel cannot agree upon an amount the cause will be remanded to fix the amount due. Costs below will remain as there taxed and the costs of appeal divided three-fourths against the City and one-fourth against the taxpayer.

Hale and Darwin, JJ., concur.