## CHARLES C. MOORE v. THE CITY OF CHATTANOOGA.—371 S. W. (2d) 815.

Eastern Section.  April 24, 1963.

Certiorari Denied by Supreme Court September 11, 1963.

Moore & Swafford, Chattanooga, for appellant Charles C. Moore.

Anderson, Meacham & Barger, Chattanooga for appellee City of Chattanooga.

COOPER, J. This appeal involves 13 suits brought by the State of Tennessee for the use of itself and the City of Chattanooga, among others, to recover property taxes for the years 1923, 1925, 1927, 1929 through 1933, 1935 and 1940, and paving taxes assessed during the year 1925. The taxes and paving costs were assessed on real property located at 627-629 Main Street, Chattanooga, Tennessee, and which was owned by Mrs. Ara Moore Wampler and Charles C. Moore as tenants in common. During

the period 1923-1940, the property was assessed only to Mrs. Wampler, and she paid the state and county taxes except for the years 1923, 1927 and 1935, and paid the City taxes except for the years set out above.

After Mrs. Wampler's death on March 4, 1940, Charles C. Moore purchased the Wampler 2/3 interest in the property from Joseph Reece Wampler, the heir of Mrs. Ara Moore Wampler. Since the date of purchase, the property has been assessed to Mr. Moore, trustee, and he has paid state, county and city tax assessments on the property as they became due.

The tax cases lay dormant from the time the various suits were filed until 1948, when, in cause 1656 (to collect taxes for the year 1927), notice was served on Mr. Moore, as the present owner of the property, that it would be sold for taxes. Mr. Moore filed a draft order to abate the taxes. On motion in behalf of the City of Chattanooga, Mr. Moore was made a party defendant in eight of the tax cases, and they were consolidated under cause 1656. No process was served on Mr. Moore, and no further action was taken in behalf of the City of Chattanooga to sell the property for taxes.

On December 21, 1960, the City of Chattanooga, acting as agent of the State of Tennessee in acquiring property located within the right-of-way of a proposed freeway, entered into an option agreement with Mr. Moore to purchase the property involved in the tax suits at a contract price of $9500.00. The option agreement provided that Charles C. Moore would execute a ''good Warranty Deed, a fee simple title to the above described tract of land, clear and free of all liens and incumbrances, including taxes, with Revenue Stamps thereunto affixed,

* * *''. The agreement further provided that ''property tax, which is a lien against the property, must be paid in full for the year in which the property is purchased, plus any prior year, or years, of taxes unpaid,'' and that ''Revenue Stamps and other liens will be deducted from the check which the property owner receives.''

The State of Tennessee, acting through its agent the City of Chattanooga, exercised its option to purchase the property. After receipt of the deed from Mr. Moore, the City of Chattanooga mailed a check for $7,787.18 to Mr. Moore, retained $10.45 to purchase Revenue Stamps, and paid $1702.37 into the Registry of the Chancery Court of Hamilton County in payment of taxes, interest and penalties due the State, County and City in the tax suits. Orders were entered dismissing the tax suits, and the money, less costs, was disbursed to the City of Chattanooga, and to Hamilton County.

Mr. Moore brought suit seeking to recover the money paid to the City of Chattanooga, contending that the assessments were irregular and void, and did not constitute a lien on the property. Mr. Moore made no effort to recover the money paid to Hamilton County in payment of taxes for 1923, 1927 and 1935.

We deem it unnecessary to discuss the pleadings or procedure followed in this case except to say that, as a result thereof, the Chancellor set aside the decrees entered in the tax cases, consolidated the 13 cases for trial, and permitted Mr. Moore to enter his appearance as a defendant in each case for the purpose of challenging the validity of the assessments, and securing a decree as to whether or not the taxes constituted a lien on the property. The Chancellor also ordered the City of Chatta-

nooga to pay $1527.76 into the Registry of the Court to await the outcome of the tax suits, this being the amount remitted to the City of Chattanooga in payment of taxes, interest, penalties and attorneys' fees in the tax suits.

In his answer to the tax suits, Mr. Moore insists, in substance, that the tax assessments were irregular and void and did not constitute a lien on the property as the description was inadequate; that process had not been served on Mrs. Wampler in 10 of the suits and that, in those suits, the action was barred by the six year limitation set out in T.C.A. sec. 67-1323; that the failure to revive and prosecute the 3 cases, in which there was personal service on Mrs. Wampler, constituted an abandonment of the claim for taxes and precluded recovery; and that the City of Chattanooga was guilty of laches in permitting the cases to lie dormant until after he, as an innocent purchaser for value, had purchased the property from the Wampler estate.

The City of Chattanooga filed an answer and cross-bill denying being guilty of laches, and denying that any of the tax suits were barred by the statute of limitations, or had been abandoned. The City also charged that Mr. Moore was not an innocent purchaser of the land as he had both actual and constructive notice of the assessment of taxes and the tax suits by virtue of his ownership of the property during the years when the taxes were assessed and suits were brought, and asked for a judgment in the tax suits for taxes, interest, penalties and attorneys' fees.

The case was tried on the records, stipulations of the parties and the deposition of Mr. Moore. The Chancellor found that the tax assessments were valid and constituted

a lien on the property. On petition to rehear, the Chancellor granted relief from the imposition of interest and penalties on the taxes because of the delay by the City in prosecuting the tax cases. A decree was then entered permitting the City "to recover of Charles C. Moore the principal amount of taxes alleged to be due in each of said thirteen tax cases, as a lien on property conveyed to the State, together with costs and attorney fees accrued in said thirteen tax cases and interest on said $1527.87 since it has been in Court." Mr. Moore appealed.

"The assessed taxes on all real estate * * * shall be and remain a first lien upon such property, from the tenth of January of each and every year, for the taxes of that year." T.C.A. sec. 67-1801. "This lien shall extend to each and every part of all tracts or lots of land, * * * notwithstanding any division or alienation thereof, or the assessing or advertising the same in the name of persons not actually owners thereof at the time of the sale, or though the owner be unknown." Sec. 67-1802. "Said taxes shall be a lien upon the fee in said property, and not merely upon the interest of the person to whom said property is or ought to be assessed, but to any and all other interests in said property, * * *" sec. 67-1803. "The whole proceeding for collection of taxes from the assessment to sale for delinquency shall be a proceeding *in rem,* and shall not be invalid on account of such land having been listed or assessed for taxation to any one as owner or owners or to any person or persons not the owner or owners or to unknown owner or owners." Sec. 67-1804.

In State ex rel. v. Collier, 160 Tenn. 403, 436, 23 S. W. (2d) 897, 908, the Court stated:

"In an action *in rem* the court acquires jurisdiction of the property by its seizure and all those having an interest in the property are deemed to have constructive notice of its seizure and are considered parties to the suit. [numerous citations]

"Whether or not seizure of the property alone, without further notice, authorizes the court to proceed to judgment is a question upon which there is a conflict of authority. See cases collected in a note 50 L.R.A. 597.

\* \* \* \* \* \*

"Our tax laws appear to be based on the views of the Supreme Court of the United States just quoted. The notification or monition provided by chapter 115, sec. 2, of the Acts of 1921, is that 'said suit shall be conducted in accordance with the practice in Courts of Chancery in this State.' That is, a summons shall issue as to those named as defendants or publication shall be made for them, as the circumstances indicate. *Those interested, however, are not made parties by the service of process or by publication. They are parties before either of these things are done—made such by the seizure of property in which they had an interest.* The function of process in cases like the one before us is fundamentally different from that of process essential to jurisdiction in an action *in personam*." (emphasis supplied.) See also Lee v. Harrison, 196 Tenn. 603, 270 S. W. (2d) 173; Williams v. Cravens, 28 Tenn. App. 541, 191 S. W. (2d) 942, 944.

In State v. Benner, 182 Tenn. 395, 187 S. W. (2d) 609, the Court reiterated that:

"These tax suits are considered action *in rem,* and it is usually held that all persons having an interest in the property are deemed to have constructive notice of the claim for taxes."

■ So while Mr. Moore was not originally named as a defendant in the 13 tax suits, the actions being *in rem,* he became a party by reason of the seizure of the land, and had constructive notice of the claim for taxes. Then too, before a decree was entered against the land, Mr. Moore made an appearance and was given an opportunity to be heard upon the validity of the liens. See State ex rel. v. Collier, 160 Tenn. 403, 436, 23 S. W. (2d) 897.

■ While recognizing that taxes, properly assessed, are a lien upon real estate and that the owner of the land has constructive notice of the claim for taxes and the seizure of the land in a tax suit, Mr. Moore insists that the assessment of taxes in the present cases was irregular and void as the description of the property was insufficient.

T.C.A. sec. 67-609 prescribes the manner for making assessments of real estate in some detail. Added to that section, however, is the following:

"* * * but a failure to assess according to this chapter shall not in any wise vitiate the assessment or sale of lands under the same, and parol testimony shall always be admissible to supply a description of land on the assessment roll or in conveyance for taxes, where such testimony will show what land was assessed and sold, and there is enough in the descrip-

tion on the roll or conveyance to be applied to a particular tract or parcel of land by aid of such testimony."

In State ex rel. v. Collier, 160 Tenn. 403, 428, 23 S. W. (2d) 897, 905, the Court said:

"Under the statute, if there is enough in the description contained on the assessment roll to be applied by proof to a particular parcel of land, the assessment is good. This is merely adopting into our tax laws the rule prevailing for the test of the sufficiency of a description of land under the statute of frauds."

"Under the Statute of Frauds the descriptive terms employed together with the parol proof must be such as to point out some especial parcel of land to the exclusion of any other parcel of land." City of Bristol v. Delinquent Taxpayers, 179 Tenn. 604, 168 S. W. (2d) 782. See also Case v. Brier Hill Collieries, 145 Tenn. 1, 235 S. W. 57.

In the consolidated cases, the property belonging to Mr. Moore was variously described on the tax rolls as:

"Lot 1, 50 x 63, Forts 1, Main Street" (1923, 1925, 1929) "W 63 S 50, Lot #1, Forts #1, Main Street" (1927, 1935) "Pt Lot 1, Forts #1, Main Street" (1931-1933, 1940 and the paving assessments)

The plat of record of Forts Addition No. 1, as filed in the Register's Office of Hamilton County, Tennessee on May 18, 1872, in Book W at page 192, shows that there are six lots designated No. 1 and that each lot fronts 50 feet on a street running north from East Main Street, and that each lot extends 140 feet along East Main Street. It is this fact that prompts, Mr. Moore to

insist that the failure to include the side street designation in the description of his property on the tax rolls makes the description insufficient.

If Mr. Moore had been the owner of lot No. 1 in its entirety, we would be inclined to agree that the description would be too indefinite to create a valid tax lien. However, Mr. Moore only owned a part of Lot No. 1, and that part had peculiar dimensions as shown by the full description of the property set out in the deed to Mr. Moore:

"The Southwest fifty feet by sixty three feet of Lot No. One, Fannin Street, in Fort's Addition, being the West sixty three (63) feet of said lot * * *"

Applying the description to the plat of record, Mr. Moore's property began at a point on East Main Street seventy seven (77) feet from Fannin Street (now Pine Street) and continued along East Main Street a distance of 63 feet. The property was 50 feet in depth and was bounded by no other street.

There is no indication in the record that any lot designated No. 1 in Forts Addition No. 1, was ever subdivided except the one conveyed to Mr. Moore, nor is there any evidence that any other lot or part thereof in the sub-division had the peculiar dimensions of Mr. Moore's property, or fronted entirely on Main Street. Both Mrs. Wampler, during her lifetime, and Mr. Moore, thereafter, recognized that the description used on the tax rolls applied to their property and paid taxes from 1922 to date, with the exception of the years now in contest, and Mrs. Wampler paid the State and County taxes during the majority of those years.

Considering the entire record, we are of the opinion that the description of Mr. Moore's property on the tax rolls met the standard imposed by the authorities set out above, and was valid.

■ Mr. Moore insists that the assessment was void for the further reason that his interest in the property was not assessed. The record shows that the entire fee was assessed. It is true that the assessment was only in the name of Mrs. Wampler; however, that does not affect the validity of the assessment nor the lien on the property for taxes. T.C.A. sec. 67-1803; Williams v. Cravens, 28 Tenn. App. 541, 191 S. W. (2d) 942.

■ Mr. Moore next urges that the tax lien was lost in the ten suits where there was no personal service on Mrs. Wampler, insisting that the mere filing of the tax suits did not toll the six year statute of limitations. T.C.A. sec. 67-1323. Mr. Moore's insistence is contra to the holding of this Court in the case of State ex rel. for Use of City of Chattanooga v. Bayless, 30 Tenn. App. 621, 209 S. W. (2d) 504, wherein Mr. Moore, as party defendant, made the same argument. In the Bayless case, this Court pointed out:

"The proceeding is one in rem and we think the institution of suit against the prior owner prevented the running of the statute."

■ Another contention of Mr. Moore is that the Chancellor erred in failing to hold that the City of Chattanooga forfeited any rights it might have to enforce the tax suits by permitting the suits to remain dormant from eighteen to thirty-eight years. Mr. Moore insists that he did not have knowledge of the existence of the suits

at the time he acquired the Wampler interest in the property, and that the failure of the City to prosecute the tax cases caused him to lose the opportunity to bring suit on the warranty against encumbrances contained in his deed from the Wampler's. We see no merit in this insistence.

■ As pointed out above, tax suits are considered actions in rem and all persons having an interest in the property are deemed to have constructive notice of the claim for taxes. In State v. McPhail, 156 Tenn. 459, 2 S. W. (2d) 413, the Court pointed out that "[the owner of the property] is charged with notice that he is liable for the tax, and that it is his duty to voluntarily pay the same. He was owner of the property when the tax lien fastened and when the bill was filed, and in legal contemplation was a party to the suit," and "could have at any time, upon motion, had an order entered requiring complainant to speed the cause."

■ Mr. Moore, having constructive notice of the claim for taxes and having the right to take action requiring the City to "speed the cause", was not an innocent purchaser of the Wampler interest and was not prejudiced in any manner by the City's failure to prosecute the cases to a speedy conclusion—unless it would be by the imposition of additional penalties and interest, which were disallowed by the Chancellor.

Having concluded that all assignments of error are without merit, the decree of the Chancellor is affirmed in its entirety. Costs of the appeal are adjudged against Mr. Moore and his surety.

McAmis, P. J., and Taylor, Special Judge, concur.